RECEIVED
MAR 18 2024
CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

United States of America,

Plaintiff,

vs.

Mukhtar Mohamed Shariff, et al,

Defendant.

Case No. 22-CR-00124(7) (NEB/TNL)

**MINNESOTA DEPARTMENT OF EDUCATION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO SHOW CAUSE AND IN SUPPORT OF ITS MOTION TO QUASH**

## INTRODUCTION

The subpoena at issue in Defendant Mukhtar Shariff's ("Defendant") motion for an order to show cause sought the same documents that were the subject of his motion for discovery. This Court ruled, six weeks before the subpoena was drafted, that the Minnesota Department of Education ("MDE") did not conduct or participate in a "joint investigation" of the charges against Defendant. This Court also denied Defendant's request for discovery "as to materials requested that are solely within the possession" of MDE in December of last year.

Evidently dissatisfied with these rulings, Defendant has attempted an end around by unilaterally drafting and serving a subpoena duces tecum for the same documents on MDE, notwithstanding decades of precedent holding that Rule 17(c) subpoenas are not an alternative vehicle for discovery. Defendant now asks this Court to hold MDE's Assistant Commissioner, Daron Korte ("Korte") in criminal contempt for not providing the same



SCANNED
MAR 18 2024 CK
U.S. DISTRICT COURT ST. PAUL

documents that this Court already ruled he could not obtain directly from MDE. The fact that Korte did not assist Defendant in bypassing this Court's discovery orders is not a basis to hold him in contempt.

Moreover, Defendant bore the burden to establish that the documents sought by the subpoena were relevant and admissible, and that the subpoena identified documents with specificity. Neither the subpoena nor Defendant's motion for an order to show cause reflect any attempt to meet this standard. MDE thus respectfully requests that the Court both deny Defendant's motion for an order to show cause and quash the unenforceable subpoena.

## STATEMENT OF RELEVANT FACTS[1]

### I. THIS COURT DENIED DEFENDANT'S MOTION FOR DISCOVERY FROM MDE LAST YEAR.

In May 2023, Defendant moved for discovery from a wide range of state and federal agencies, including MDE, as part of a joint motion for discovery. Doc. 229. The discovery Defendant sought from MDE included:

- Investigative reports;
- Witness interviews and communications;
- Case files "that relate to any of the defendants named in this Superseding Indictment;"
- Documents related to changes to the U.S. Department of Agriculture and its Food and Nutrition Service to the Federal Child Nutrition Program related to the COVID-19 pandemic;
- Documents related to any waiver of any standard required for participation in the Federal Child Nutrition Program;

[1] MDE does not expressly or impliedly make any admissions, or expressly or impliedly waive any legal defenses or arguments, by reciting on the facts relevant to this motion. MDE reserves the right to introduce additional facts, or make additional arguments, as part of its Motion to Quash or in other relevant proceeding(s).

- Documents related to the definition of a "meal" under the Federal Child Nutrition Program;
- Documents and materials concerning the Bloomington, Medford, and Waseca "sites;" and
- Documents "and materials concerning the Muktar Shariff (sic) or Afrique Hospitality Group LLC."

*Id.* at 1–4. In its response to this motion, the Government explained that, during its investigation, it subpoenaed MDE for records "related to the fraud scheme." Doc. 278 at 13. The Government also affirmatively stated that it produced the records it subpoenaed from MDE in discovery. *Id.* Defendant subsequently acknowledged that MDE already produced over 270,000 pages of documents to the Government, which Defendant received in discovery. Doc. 302 at 4.

In mid-December 2023, Magistrate Judge Leung issued a Discovery Order partially denying Defendant's discovery motion. Doc. 317. In relevant part, the Discovery Order rejected Defendant's proposition that MDE had engaged in a joint investigation with federal law enforcement. *See id.* at 31 (taking particular note of the fact that MDE and other state agencies only produced documents in response to grand jury subpoenas, and did not receive information about the investigation from the Government.) The Discovery Order repeatedly emphasized that the documents the Government obtained from MDE were already previously provided to Defendant in discovery. *Id.* at 20 & 31. "As there was no joint investigation," the Discovery Order denied Defendant's motion "as to materials requested that are solely within the possession of the other federal and state agencies." *Id.* at 33. Thus, as of December 19, 2023, Defendant was on notice that he was not entitled to discover any documents solely in the possession of MDE. *Id.* And, as of at

least December 19, 2023, Defendant was also on notice that any documents MDE had provided to the Government had already been produced in discovery.

Defendant objected to the conclusion that there was no joint investigation, and that the Government's disclosure obligations could not be extended to MDE. Doc. 328. This Court, however, noted that Defendant did not identify "any factual error" with Magistrate Judge Leung's analysis of whether a joint investigation occurred. Doc. 343 at 6. Rather, the Court noted, Defendant only identified statements indicating that MDE had "handed documents over to prosecution." *Id.* at 7. Accordingly, the Court denied Defendant's appeal on February 22, 2024. *See id.*

## II. Two weeks after filing its objections to the Discovery Order, Defendant Served MDE with a Purported "Subpoena" Seeking the Exact Same Discovery the Discovery Order Denied.

On February 6, 2024, Defendant served form subpoena on Korte. Doc. 350 at 15. The purported subpoena was issued with a caption of "United States of America v. ____________________." *Id.* at 14. The document included an undated signature of the Clerk of this Court, and did not bear the Court's seal. *Id.* The form Defendant served demanded production of documents to this Court on February 29, 2024, at 10:00 AM before Magistrate Judge Leung. *Id.*

The subpoena form was accompanied by a letter from Defendant's counsel seeking fourteen categories of documents. Doc. 350 at 11–13. These requests all spanned over two years, from January 1, 2020, through January 31, 2022. *Id.* The accompanying letter in no way acknowledged or addressed the fact that this Court had already determined that Defendant was not entitled to obtain discovery directly from MDE, or any other state

agency. *See id.* The letter demanded production of the same documents that Defendant's discovery motion had unsuccessfully sought, including documents related to waivers, the definition of the word meal, various sites, and investigative files and communications. *Id.* MDE did not re-produce the same documents it had already provided the Government, and that the Government already produced to Defendant in discovery, in response to Defendant's subpoena.

**STANDARD OF REVIEW**

"[S]ubpoenas duces tecum are not meant to serve as tools of discovery in criminal cases, but are instead means by which to expedite the trial by providing a time and place prior to trial for the inspection of subpoenaed materials." *United States v. Bueno*, 443 F.3d 1017, 1026 (8th Cir. 2006). This Court has broad discretion to quash a subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Subpoenas that are not enforceable can and should be quashed. *Bueno*, 443 F.3d at 1026.

To be enforceable, the party promulgating the subpoena duces tecum must make four showings:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699–700. Phrased another way, the party seeking to enforce a subpoena *duces tecum* bears the burden to show that the subpoenaed documents are (1) relevant, (2) admissible, and (3) have been requested with adequate specificity. *Id.*

at 700; *United States v. Hardy*, 224 F.3d 752, 755 (8th Cir. 2000).[2] A party's "mere hope that it will turn up favorable evidence" does not justify a subpoena *duces tecum*. *United States v. Stevenson*. 727 F.3d 826, 831 (8th Cir. 2013). Likewise, a subpoena *duces tecum* that does not "even identify by name the documents desired" is subject to quashing based on insufficient specificity. *United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996).

**ARGUMENT**

Defendant has not met his burden to show that the documents "are evidentiary and relevant," and that its subpoena "is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, at 699–700. In its previous orders, this Court *already concluded* that Defendant has no right to obtain discovery from MDE, meaning the documents sought are not "evidentiary." Moreover, Defendant's requests are extremely broad, seeking all documents relating to various topics for a two-year period, rather than specifically identifying documents that meet the standard established in *Nixon*. Furthermore, Defendant's subpoena seeks to have MDE re-provide some or all of the roughly 270,000 pages of documents that the Government already obtained from MDE and already produced in discovery, which cannot reasonably be called anything other than a fishing expedition. Even if Defendant was to argue that the subpoena sought documents

---

2 *Hardy* and *Nixon* refer to these criteria as the burden of the "moving party." *Hardy*, 224 F.3d at 755; *Nixon*, 418 U.S. at 699. The text of these decisions imply that, typically, a party must bring a motion or make an application for the issuance of a subpoena duces tecum. *See also, e.g.*, D. Minn. LR 49.1(c)(1)(v) & (vi) (requiring that applications and orders disposing of applications for subpoenas duces tecum on behalf of a defendant, and subpoenas duces tecum under Rule 17(c), be filed under seal). It is not clear whether Defendant did so here, or unilaterally bypassed this step.

which have not been produced in discovery, an argument which he has not to date made, enforcement of the subpoena would still be overly burdensome, and unreasonable in light of this Court's discovery orders. Accordingly, the subpoena must be quashed, and as a result Defendant's request for an order to show cause is moot.

## I. THE SUBPOENA MUST BE QUASHED BECAUSE IT DOES NOT SEEK DOCUMENTS WITH SPECIFICITY.

Defendant's subpoena is insufficiently specific to meet the *Nixon* standard. Specificity, in this context, means "more than the title of a document and conjecture as to its contents." *Stevenson*, 727 F.3d at 831; *see also Hang*, 75 F.3d at 1283 (affirming decision to quash subpoena where Defendant's subpoenas "did not even identify by name the documents desired"). Merely seeking records and documents "relating to" an individual or entity is insufficiently specific to satisfy this requirement. *See, e.g.*, *United States v. Bradford*, 806 F.3d 1151, 1155 (8th Cir. 2015) (affirming denial of request for subpoena duces tecum for all victim's medical records in year preceding shooting death); *United States v. Wilkens*, Criminal File No. 12-74 (MJD/LIB), 2012 WL 2885364, at *4 (D. Minn. Jul. 13, 2012) (refusing to order subpoena duces tecum for all school records for six students). Similarly, merely requesting documents over a fixed period of time, with no indication of their expected contents, is insufficient to meet *Nixon*'s specificity requirement. *United States v. Cole*, Criminal No. 09-193 (MJD/AJB), 2010 WL 1526488, at *1 (D. Minn. Apr. 15, 2010); *United States v. Ruzicka*, Criminal No. 16-246 (JRT/FLN), 2018 WL 747411, at *1–3 (D. Minn. Feb. 7, 2018) (distinguishing between prior request

for all business valuations reports from 2004-2017 and renewed request for only those specific reports from 2006 and 2013 that were likely to contain relevant information).

Here, Defendant does not even approach the standard that *Stevenson* deemed inadequate. Defendant does not identify the title of any document; rather, his subpoena refers only to broad categories of documents, defined by what the documents "relate to in any way," during a 25-month period. Similar requests resulted in quashed subpoenas in *Hang*, *Wilkens*, *Cole*, and initially in *Ruzicka*. This case should be no different.

Defendant also does not offer even conjecture as to the contents of the documents sought. Neither Defendant's subpoena, nor his motion, describe in any way what it means to "relate to" the categories identified, what documents it believes are related, how it believes those documents might be related, or any other information about what could reasonably be expected to be found in the documents. This is a fishing expedition in every sense but the literal, and the Court should prevent it from going forward. The Court also certainly should not hold Korte, or anyone else at MDE, in criminal contempt for declining to entertain Defendant's treasure hunt.

## II. THE SUBPOENA MUST BE QUASHED BECAUSE DEFENDANT HAS NOT MET HIS BURDEN TO SHOW THAT THE DOCUMENTS SOUGHT ARE RELEVANT OR ADMISSIBLE.

Defendant also bears, and has not met, the burden to prove that the documents subpoenaed are relevant and admissible. *Nixon*, 418 U.S. at 700. Rule 17(c) is *not* a tool for "ferreting out information which may be either relevant or admissible." *United States v. Najarian*, 164 F.R.D. 484, 488 (D. Minn. 1995). Accordingly, courts do not presume relevance or admissibility, and err on the side of limiting, rather than expanding, the scope

of a subpoena when these showings are not persuasive. *Id.* at 487 (concluding that request was "more in the nature of a 'treasure hunt'" because the relevance and admissibility of the documents sought was "inescapably uncertain"). *See also United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992) (noting that this standard can be met by "giving reasons that permit[] a rational inference of relevance, as well as by making a sufficient preliminary showing of admissibility."), *cited with approval in Hardy*, 224 F.3d at 755.

The words "relevant" and "admissible" appear nowhere in Defendant's submissions. *See generally* Doc. 349–51. Moreover, because Defendant has not identified the documents he is seeking with specificity, it is impossible to address their admissibility—as in *Najarian*, the admissibility of the subpoenaed documents is "inescapably uncertain." Even in his motion for an order to show cause, Defendant does not contend that the documents are relevant or admissible (nor could he given the Court's prior rulings in this case, *see infra* at III), only that they were responsive to the subpoena. *See* Doc. 349. Defendant thus has failed to carry the burden established by the Supreme Court in *Nixon*, and his subpoena must be quashed.

## III. ENFORCEMENT OF THE SUBPOENA WOULD BE UNREASONABLE IN LIGHT OF THE COURT'S DISCOVERY ORDERS, AND OVERLY BURDENSOME GIVEN THE VOLUME OF DOCUMENTS ALREADY PRODUCED.

### A. A Subpoena Duces Tecum is not a Tool to Avoid Unfavorable Discovery Determinations.

As Magistrate Judge Leung acknowledged in his Discovery Order, criminal defendants do not have a general right to discovery. Doc. 317 at 21 (quoting *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000)). "It was not intended by Rule 16 to give a

limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). In other words, a subpoena duces tecum is not a tool for discovery, but rather to have discoverable documents delivered in advance of trial. *Id.*

In this case, MDE's documents have already been delivered: first, by MDE to the Government in the course of the federal criminal investigation, and, second, by the Government in the course of discovery. Additionally, this Court has already ruled that Defendant is not entitled to further discovery under Rule 16. Docs. 317 & 343. Enforcing Defendant's subpoena would allow Defendant to seek discovery under Rule 17 that this Court has already denied under Rule 16. Any such result is precluded by *Bowman Dairy Company*, and requiring MDE to participate in circumventing the Court's rulings would be unreasonable. The subpoena must therefore be quashed.

**B. Forcing MDE to Hunt for Potentially Responsive Documents that were not Already Produced in Discovery, When There is no Evidence that Any Such Documents Exist, Would be Oppressive.**

Even if the Government had not already produced MDE's documents responsive to the subpoena in discovery, and even if the Court had not already prohibited Defendant from obtaining further discovery directly from MDE, the subpoena would still be overly burdensome. This Court may properly quash a subpoena when "the burden of producing the records sought greatly outweighed any relevance they might have to the case." *United States v. Kalter*, 5 F.3d 1166, 1169 (8th Cir. 1993). "Moreover, the trial court can refuse to enforce the subpoena before trial if the moving party fails to demonstrate a need for the material at that point in the proceedings." *United States v. McGrady*, 502 F.2d 13, 18 (8th

Cir. 1974).

Again, there is no way to ascertain the relevance of the subpoenaed documents because the subpoena is insufficiently specific, and Defendant has offered no other evidence of relevance. By contrast, the burden to MDE from complying with the subpoena would be significant. As written, the subpoena gave MDE just over three weeks from the date of service to gather documents spanning two years that were "related in any way" to fourteen topic areas. MDE would then have had to cross-reference the 270,000 pages of documents it already produced to the Government (which, again, are already in Defendant's possession through discovery), and determine whether any responsive documents remained to be produced. Defendant offered no evidence that any additional documents, beyond those that were already produced during the criminal investigation, exist.[3] Moreover, because Defendant has not identified any specific documents that are in MDE's possession but were not part of discovery, he cannot demonstrate a need for those documents at this point in the proceedings. Therefore, this Court can and should quash Defendant's subpoena.

## IV. THE SUBPOENA'S DEFECTS FORECLOSE ANY FINDING OF CONTEMPT AGAINST MDE, AND NO ORDER TO SHOW CAUSE SHOULD BE ISSUED.

Given the substantial defects in Defendant's subpoena, criminal contempt is inappropriate. "One should not be held in contempt under a subpoena that is part good and

---

[3] Furthermore, if such documents existed, MDE would be required to provide them to the Government, which would in turn be required to produce them in discovery. *See* Doc. 302 at 18 n.9; *id.* at 32. Again, however, this is purely hypothetical, and hypothetical hopes that documents might exist do not warrant a subpoena duces tecum. *Stevenson*. 727 F.3d at 831.

part bad." *Bowman Dairy Co. v. United States*, 341 U.S. at 221. "The burden is on the court to see that the subpoena is good in its entirety and it is not upon the person who faces punishment to cull the good from the bad." *Id.*

Here, it does not appear that Defendant even gave the Court the *opportunity* to weigh in on its role to "see that the subpoena [was] good in its entirety;" rather, Defendant unilaterally drafted a subpoena and attempted to avoid the Court's involvement wherever possible. As a result, Defendant's subpoena is more than "part bad" – it is an unenforceable request for a broad, ill-defined laundry list of documents ***that were already produced to Defendant***. Neither Korte, nor any other employee or agent of MDE, should be punished with criminal contempt for not participating in Defendant's fishing expedition. In addition to quashing the subpoena, therefore, the Court should deny Defendant's motion for an order to show cause.

## CONCLUSION

Defendant's subpoena does not meet *Nixon*'s requirements regarding relevance, admissibility, and specificity, and this Court has already foreclosed the idea of discovery directly from MDE. Defendant cannot now expect the Court to initiate criminal contempt proceedings against Korte based on his legally deficient subpoena. For the foregoing reasons, MDE respectfully requests that the Court quash Defendant's facially invalid subpoena, and deny Defendant's motion for an order to show cause.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

Dated: March 18, 2024

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

s/ **Frank Langan**
FRANK LANGAN
Assistant Attorney General
Atty. Reg. No. 0399106

JOE WEINER
Assistant Attorney General
Atty. Reg. No. 0389181

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 300-7602 (Voice)
(651) 297-4139 (Fax)
frank.langan@ag.state.mn.us
joseph.weiner@ag.state.mn.us

ATTORNEYS FOR MINNESOTA
DEPARTMENT OF EDUCATION