UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-124 (NEB/TNL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **GOVERNMENT'S TRIAL BRIEF** |
| | ) | |
| ABDIAZIZ SHAFII FARAH, | ) | |
| MOHAMED JAMA ISMAIL, | ) | |
| MAHAD IBRAHIM, | ) | |
| ABDIMAJID MOHAMED NUR, | ) | |
| SAID SHAFII FARAH, | ) | |
| ABDIWAHAB MAALIM AFTIN, | ) | |
| MUKHTAR MOHAMED SHARIFF, and | ) | |
| HAYAT MOHAMED NUR, | ) | |
| | ) | |
| Defendants. | ) | |

The United States of America, by and through its attorneys, Andrew M. Luger,

United States Attorney for the District of Minnesota, Joseph H. Thompson, Harry M.

Jacobs, Matthew S. Ebert, Chelsea A. Walcker, and Daniel W. Bobier, Assistant

United States Attorneys, respectfully submits the following trial brief in this matter.

## I.   OVERVIEW

On September 13, 2022, a grand jury returned a 43-count superseding

indictment charging eight defendants—Abdiaziz Shafii Farah, Mohamed Jama

Ismail, Mahad Ibrahim, Abdimajid Mohamed Nur, Said Shafii Farah, Abdiwahab

Maalim Aftin, Mukhtar Mohamed Shariff, and Hayat Mohamed Nur—with a number

of crimes, including: one count of conspiracy to commit wire fraud, in violation of 18

U.S.C. §§ 371 and 1343; eleven counts of wire fraud, in violation of 18 U.S.C. § 1343;

one count of conspiracy to commit federal programs bribery, in violation of 18 U.S.C.

§§ 371 and 666; six counts of federal programs bribery, in violation of 18 U.S.C. § 666; one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a) and (h); twenty-two counts of money laundering, in violation of 18 U.S.C. § 1957; and one count of false statement in a passport application, in violation of 18 U.S.C. § 1542.

The indictment alleges that the defendants orchestrated and carried out a scheme that defrauded the Federal Child Nutrition Program, a government aid program designed to provide free meals to children in need. The defendants exploited the Covid-19 pandemic to obtain, misappropriate, and launder tens of millions of dollars in program funds that were intended as reimbursements for the cost of serving meals and food to children. In all, the defendants fraudulently misappropriated more than $40 million in Federal Child Nutrition Program funds.

## II.   BACKGROUND

### A.   The Federal Child Nutrition Program

The Federal Child Nutrition Program is a government program that ensures children receive nutritious meals and snacks that adequately promote healthy physical and education development. The program is run through the Food and Nutrition Service, an agency of the United States Department of Agriculture ("USDA"). That agency administers Federal Child Nutrition Programs, which includes the Summer Food Service Program and Child and Adult Care Food Program (together, the "Federal Child Nutrition Program").

The Summer Food Service Program ("SFSP") is a federal program established to ensure that children continue to receive nutritious meals when school is not in

session. The Summer Food Service Program reimburses non-profit organizations and other participating entities that serve free healthy meals and snacks to children and teens in low-income areas. The Child and Adult Care Food Program ("CACFP") is a federal program that reimburses non-profit organizations and other participating entities that serve healthy meals and snacks to children and adults at participating childcare centers, daycare homes, and after-school programs.

The Federal Child Nutrition Program operates throughout the United States. The USDA's Food and Nutrition Service administers the programs at the national and regional levels by distributing federal funds to state governments, which provide oversight for the Federal Child Nutrition Program. In Minnesota, the Minnesota Department of Education ("MDE") administers the Federal Child Nutrition Program.

The Federal Child Nutrition Program operated through sponsors, which oversaw the sites. Sponsors, like Feeding Our Future and Partners In Nutrition, are responsible for monitoring the operation of the programs and submitting reimbursement claims.

Feeding Our Future and Partners In Nutrition were non-profit organizations purportedly in the business of helping community partners participate in the Federal Child Nutrition Program. Both were approved sponsors of the Federal Child Nutrition Program, and prior to the onset of the Covid-19 pandemic, each operated as a small non-profit that sponsored the participation of Minnesota daycares and after school programs in the Federal Child Nutrition Program.

Meals funded by the Federal Child Nutrition Program in Minnesota are served at "sites." Each site participating in the Federal Child Nutrition Program must be sponsored by an organization authorized to participate in the Federal Child Nutrition Program. Sponsors are required to submit an application to MDE for each site. Sponsors are responsible for monitoring each of their sites and preparing reimbursement claims for their sites.

Sponsors submit reimbursement claims to MDE on behalf of sites under their sponsorship. The USDA provides federal reimbursement funds to MDE on a per-meal basis. MDE provides the federal funds to the sponsoring agency, which in turn pays the reimbursement funds to the sites under its sponsorship. The sponsoring agency retains ten to fifteen percent of the funds as an administrative fee in exchange for sponsoring the sites, submitting reimbursement claims, and disbursing the federal funds.

In exchange for sponsoring the sites' fraudulent participation in the program, sponsors received Federal Child Nutrition Program funds as administrative fees. In 2020 and 2021, Feeding Our Future and Partners In Nutrition received tens of millions of dollars in Federal Child Nutrition Program funds in administrative fees. Because the amount of administrative fees the sponsors received was based on the amount of federal funds received by sites under its sponsorship, Feeding Our Future and Partners In Nutrition received tens of millions of dollars in administrative fees to which they were not entitled, due to its sponsorship and facilitation of fraudulent sites participating in the program.

4

B.     **The Covid-19 Waivers and Fraud**

The Covid-19 pandemic, including various stay-at-home orders and distance learning, disrupted the operation of the Federal Child Nutrition Program. As a result, the USDA issued waivers to the program requirements, allowing additional flexibility for implementing the program and expanding the scope of the program. Following the start of the Covid-19 pandemic and the resulting waivers, Feeding Our Future and Partners In Nutrition sponsored an exponential number of new sites—more than 200 new Federal Child Nutrition Program sites.

Historically, the Federal Child Nutrition Program provided meals to children involved in education-based programs or activities. During the Covid-19 pandemic, the USDA waived several of the standard requirements for participation in the Federal Child Nutrition Program. Among other things, the USDA allowed for-profit restaurants to participate in the program. It also allowed for food distribution to children outside of educational programs. At the same time, the state government's stay-at-home order and telework policies made it more difficult to oversee the program. These changes left the program vulnerable to fraud and abuse.

Beginning in approximately April 2020—with the onset of the Covid-19 pandemic—Feeding Our Future and Partners In Nutrition dramatically increased the number of sites under their sponsorship as well as the amount of Federal Child Nutrition Program funds received by those sites.

Feeding Our Future went from receiving and disbursing approximately $3.4 million in federal funds to sites under its sponsorship in 2019 to nearly $200 million

in 2021. Partners In Nutrition went from receiving and disbursing approximately $5.6 million in federal funds to sites under its sponsorship in 2019 to more than $200 million in 2021. In 2021, sites under the sponsorship of Partners In Nutrition claimed to have served more than 80 million meals to children in Minnesota.

## III.   THE DEFENDANTS' SCHEME TO DEFRAUD THE FEDERAL CHILD NUTRITION PROGRAM

### A.   The Defendants and Their Roles

**Abdiaziz Farah** and **Mohamed Ismail** owned and operated Empire Cuisine & Market, a small storefront market located in a strip mall in Shakopee, Minnesota. Shortly after forming their company in April 2020, they enrolled in the Federal Child Nutrition Program. They opened multiple food distribution sites in and around Shakopee under the sponsorship of Partners in Nutrition. At first, they claimed to be serving meals to several hundred kids per day at their handful of food distribution sites. But by 2021, they claimed, falsely, to be serving meals to thousands of kids at a dozen or more sites around the state of Minnesota. They also claimed to be providing food to be served at nearly 50 sites operated by their co-conspirators.

Abdiaziz Farah and Mohamed Ismail claimed—fraudulently—that their small storefront market served millions of meals to Minnesota kids in 2020 and 2021. Based on these fraudulent claims, Empire Cuisine & Market received more than $30 million in Federal Child Nutrition Program funds to which they were not entitled. After laundering the money through a series of shell companies, they and their co-conspirators used it to purchase cars and real estate, fund their lifestyle and foreign travel, and invest abroad.

**Mahad Ibrahim** was the founder of ThinkTechAct and Mind Foundry, two educational non-profits that purported to provide online STEM education. Mahad Ibrahim worked with Abdiaziz Farah and other co-conspirators to open a large number of food distribution sites in the name of his non-profit. Between ThinkTechAct and Mind Foundry, the defendants created more than two dozen Federal Child Nutrition Program sites through Minnesota, including in Minneapolis, St. Paul, Bloomington, Burnsville, Faribault, Owatonna, Shakopee, Circle Pines, and Willmar. These sites operated under the sponsorship of both Feeding Our Future and Partners In Nutrition.

At times, ThinkTechAct and Mind Foundry claimed to serve meals to more than 25,000 children a day at their various sites. In total, from February 2021 through January 2022, ThinkTechAct received more than $18 million in federal funds from Partners In Nutrition and another $3.7 million from Feeding Our Future. Most of this money flowed through ThinkTechAct to Empire Cuisine & Market, from which Mahad Ibrahim's non-profits claimed to be purchasing food for distribution at their sites.

**Said Farah** and **Abdiwahab Aftin** created Bushra Wholesalers, ostensibly a food distribution company that provided food to be served at their co-conspirators' sites. Said Farah and Abdiwahab Aftin created Bushra Wholesalers in February 2021—in the midst of the fraud scheme—and immediately began using the company to receive and launder fraudulently obtained Federal Child Nutrition Program funds. In all, Bushra Wholesalers received more than $4.5 million in Federal Child Nutrition

Program funds from Empire Cuisine & Market, ThinkTechAct, and other entities involved in the scheme. Said Farah and Abdiwahab Aftin only spent a small fraction of this money on food. The rest of the money was distributed to co-conspirators via shell companies and other entities used to receive and launder fraud proceeds. Abdiwahab Aftin also sent more than $600,000 of this money overseas, including to purchase real estate in Nairobi, Kenya.

**Mukhtar Shariff** was the CEO of Afrique Hospitality Group, a company he created in January 2021 in order to build a restaurant, event space, and food service company in Bloomington, Minnesota. The stated purpose of Afrique Hospitality was to promote African culture, community, and economic empowerment through innovative cuisine and experiences. Mukhtar Shariff funded the development of Afrique with misappropriated Federal Child Nutrition Program funds from Empire Cuisine & Market, ThinkTechAct, and other entities that fraudulently obtained Federal Child Nutrition Program funds.

Mukhtar Shariff also operated a food distribution site in Bloomington, Minnesota, under the sponsorship of Feeding Our Future. Mukhtar Shariff claimed that his site served meals to 3,500 children per day, seven days a week. In support of these claims, he submitted fake meal count sheets, invoices, and rosters of children.

**Abdimajid Nur** and **Hayat Nur** participated in the scheme by creating fake and fraudulent meal count sheets, invoices, and rosters containing the names of children purportedly receiving meals at the food sites.

### B.      The Fraudulent Food Sites

To advance the fraud, the defendants created dozens of Federal Child Nutrition Program sites throughout the State of Minnesota, which operated under the sponsorship of both Feeding Our Future and Partners in Nutrition. The defendants collectively claimed to be serving meals to tens of thousands of children each day throughout the State of Minnesota, for which they fraudulently claimed and received millions of dollars in Federal Child Nutrition Program funds.

At the pandemic's outset, the defendants operated just a few Federal Child Nutrition Program sites. In April 2020, Abdiaziz Farah and Abdimajid Nur's Empire Cuisine & Market LLC claimed to serve 5,456 meals at a single location, for which they sought reimbursement of $17,500 from the Federal Child Nutrition Program. However, the defendants' Federal Child Nutrition Program claims rapidly skyrocketed. In January 2021, Abdiaziz Farah and his co-conspirators claimed that Empire Cuisine served more than 400,000 meals to children in a single month, for which they fraudulently claimed to be entitled to more than $1.5 million in Federal Child Nutrition Program funds.

Within a matter of months, Empire Cuisine & Market LLC professed to serve thousands of children every day from approximately fifteen sites including locations in Minneapolis, St. Paul, Faribault, Owatonna, Shakopee, Bloomington, Circle Pines, and Savage. Similarly, Mahad Ibrahim's first fraudulent foray began rather modestly, with one site that claimed to serve 700 meals in September 2020 through ThinkTechAct and Mind Foundry. Such modesty was short-lived. Within a few

months of operations, Ibrahim fraudulently claimed he was serving more than 540,000 meals to needy children at more than a dozen locations.

The defendants' fraud, like an aggressive cancer, spread and grew. As the evidence will make clear, the number of sham food sites and phony meal claims concocted by the defendants quickly snowballed through 2020 and 2021. At their fraudulent peak in March 2021, the defendants claimed to serve 2.7 million meals to children in just that month alone—an impossibility. Ultimately, by the time the defendants' scheme was exposed in early 2022, they collectively claimed to have served over 18 million meals from 50 unique locations for which they fraudulently sought reimbursement of $49 million from the Federal Child Nutrition Program.

At trial, the evidence will establish how the defendants opened dozens of Federal Child Nutrition Program sites around the state of Minnesota. Many of their purported food "sites" were nothing more than inhospitable parking lots or derelict commercial spaces, like these:





The defendants listed as their purported food sites such locales as city parks, apartment complexes, or community centers. But the jury will hear from witnesses who had access or control over these locations. Those witnesses will testify that the defendants did not provide thousands of meals as claimed. In some instances, the defendants simply misappropriated the address and name of a location, like a city park, without permission or authorization and then falsely claimed to be feeding kids daily at the site. At some of their sites, the defendants claimed to be preparing their

11

meals on site to feed children. However, witnesses from those sites—including property managers, landlords, and neighbors—will testify about the falsity of such claims. Among other things, these witnesses will explain that defendants did not— *and could not*—prepare food at their respective sites as they claimed because there were no amenities to do so.

The trial evidence will reveal that some of the defendants and their conspirators created and submitted sham meal count sheets and phony attendance rosters purporting to list the names of children who received meals at their sites, often with demonstrably fake names, like "Man Sincere," "Ron Donald," and even "John Doe."  Indeed, school district personnel will testify that the falsified names on these rosters appear nowhere in the official school district enrollment records of multiple school districts where the defendants professed to serve millions of meals. In addition, the evidence will show that most of the children on the defendants' rosters and meal count sheets were not even enrolled in the local school districts where the defendants purported to be feeding them almost daily. That is because the attendance rosters and meal count sheets were fake. Indeed, by way of example, the email records of defendants Abdimajid Nur and Hayat Nur will make clear at trial how such sham records were used in the scheme, including Abdimajid Nur's instructions to Hayat Nur for creating fake records:

**From:** Abdi Majid Nur <anur@thinktechact.org>
**To:** hayatnur861@gmail.com
**Subject:** Weekly Consolidated Meal Counts
**Date:** Mon, 21 Jun 2021 23:24:47 -0500

Weekly Consolidated Meal Counts 043184 (24).pdf

Partners in Quality
1. Albright 1500
2. Clifton 1000
3. Four Seasons 500
4. Lifestyle 500
5. Greenwood Place 500
6. Autumn Holdings 500
7. Al Ihsan 1100
8. As Sunnah 2000
9. Samaha 2000
10. Winfield 600
11. Shamrock Court 1000

An easy trick I usually do while doing these: for all the sites that have the same meal count, like Four seasons, Lifestyle, and so on, after I save the document, I would just then bring up the same document again and just change the site name and make sure to save it as a NEW document because everything else will be the same because its the same month and the dates don't change. It'll save you soo much time! Let me know if you have any questions.

In support of their fraudulent claims, the defendants and their conspirators additionally created and submitted fraudulent invoices purporting to show their purchase of food to feed children. Repeatedly throughout the scheme, the defendants used invoices purporting to show massive payments:



Defendants Abdimajid Nur and Hayat Nur created some of these fake invoices, as their Google documents and emails will show. For instance, in one email, Hayat Nur forwarded herself a "master document," an invoice that could be edited. As Hayat Nur put it, "don't save it as a PDF!!!"

**Master Document**

| | |
|---|---|
| **From:** | Hayat Nur <hayatnur861@gmail.com> |
| **To:** | Hayat Nur <hayatnur861@gmail.com> |
| **Date:** | Tue, 21 Dec 2021 23:15:21 -0600 |
| **Attachments:** | Master Document.docx (40.49 kB); Invoice #1.pdf (165.21 kB) |

You can edit Master document (DON'T SAVE IT AS PDF)!!!!

Hayat Nur created multiple invoices during the scheme that fraudulently contained vast payments for food. In one January 2022 email alone, Hayat Nur sent invoices purporting to document the purchase of more than $10 million in food and expenses related to the program.

| | |
|---|---|
| **From:** | Hayat Nur <hayatnur861@gmail.com> |
| **To:** | abdiaziz farah <aazizfarah@gmail.com> |
| **Cc:** | Abdi Nur <19anur@gmail.com> |
| **Subject:** | Re: Register-INVOICES |
| **Date:** | Wed, 12 Jan 2022 16:04:56 -0600 |
| **Attachments:** | 2_21-Minnehahah_Transportation_-_Minnehaha_Transporation.pdf; 3_21-Empire_Enterprises_LLC_-_3_21_Empire_Enterprises_LLC.pdf; 2_21-Bushra_Wholesalers,_LLC_-_2_21-Bushra,_Wholesalers,_LLC.pdf; 2_21-Empire_Cuisine_-_2_21-Empire_Cuisine.pdf; 4_21-Empire_Cuisine_-_4_21_Empire_Cuisine.pdf; 4_21-Empire_Enterprises_LLC_-_4_21_Empire_Enterprises_LLC_(1).pdf; 4_21-Empire_Enterprises_LLC_-_4_21_Empire_Enterprises_LLC.pdf; 4_21-Nur_Consulting_-_Nur_Consulting_LLC.pdf; 5_21-Empire_Cuisine_-_Empire_Cuisine.pdf; 5_21-Empire_Enterprises_LLC_-_Empire_Enterprises_LLC.pdf; 5_21-Nur_Consulting_-_5_21_Nur_Consulting.pdf; 6_21-Bushra_Wholesalers_LLC_-_6_21-Bushra_Wholesalers_LLC.pdf; 6_21-Bushra_Properties_-_6_21_Bushra_Properties.pdf; 6_21-Empire_Cuisine_-_6_21-_Empire_Cuisine.pdf; 6_21-Empire_Enterprises_LLC_-_6_21-_Empire_Enterprises_LLC.pdf; 6_21-Nur_Consulting_LLC_-_6_21-Nur_Consulting_LLC.pdf; 7_21-Bushra_Wholesalers_LLC_-_7_21-Bushra_Wholesalers_LLC.pdf; 7_21-Bushra_Properties_-_7_21-Bushra_Properties.pdf; 7_21-Empire_Enterprises_LLC_-_7_21-Empire_Enterprises_LLC.pdf; 8_21-Empire_Enterprises_LLC_-_8_21-Empire_Enterprises_LLC.pdf |

However, these massive payments on Hayat Nur's invoices purported to be for the purchase of food and meals to be served at the sites but, in reality, the defendants

used Empire Cuisine and Market, Bushra Wholesalers, and other companies to divert Federal Child Nutrition Program funds and convert them for their own use.

### C.     The Money Laundering

In all, the defendants claimed to have served more than 18 million meals to children. Based on their fraudulent claims, the defendants received more than $47 million in Federal Child Nutrition Program funds over an 18-month period from summer 2020 through January 2022. These federal funds were received by the defendants' companies from Partners in Nutrition or Feeding Our Future.

The defendants created and used an array of entities and shell companies to receive, launder, and distribute their fraudulent proceeds. Some of these companies purported to be meal vendors providing meals and food to program sites, but in reality, the companies were shells created to disguise the source and ownership of the fraud proceeds. The defendants transferred millions of dollars between their shell companies to conceal the source of the funds, and then used the shell companies to purchase millions of dollars' worth of real estate and cars, pay for luxury travel, and fund their lifestyles and personal spending.

#### 1.     The "Vendor" Companies

The defendants used "vendor" companies—ostensibly in the business of providing wholesale food distribution—to launder their fraudulent proceeds. In reality, the vendor companies provided only a fraction of the food that their sites claimed to be serving and acted a source to conceal the source of the fraud proceeds.

Most of the defendants' fraudulent food sites were nominally opened in the name of Mahad Ibrahim's non-profit, ThinkTechAct, which received more than $21

million in Federal Child Nutrition Program funds from Partners in Nutrition or Feeding Our Future. As Mahad Ibrahim's own records will establish, ThinkTechAct, in turn, paid the bulk of these funds over to the vendor Empire Cuisine & Market. ThinkTechAct purported to pay Empire Cuisine & Market for food distributed at its various sites. Instead ThinkTechAct used Empire Cuisine & Market to receive and launder the Federal Child Nutrition Program funds while concealing the money as payments for the purchase of food.

The defendants also used Bushra Wholesalers to receive and launder fraud proceeds. Said Farah and Abdiwahab Aftin registered Bushra Wholesalers on February 10, 2021. Bushra Wholesale purported to be a vendor—a food distribution company from which Empire Cuisine & Market purchased food to be served at their sites. In reality, the company was used to receive and launder the proceeds of the fraud scheme and to produce fake invoices purporting to document the purchase of food.

For example, on February 16, 2021, six days after they registered Bushra Wholesalers, Said Farah and Abdiwahab Aftin opened a bank account in the name of their new company. That same day, Said Farah and Abdiwahab Aftin deposited two checks—a $100,000 check dated February 11, 2021, from ThinkTechAct Foundation for "food storage" and a $100,000 check dated February 16, 2021, from Empire Cuisine & Market for "wholesale products." This $200,000 came from Federal Child Nutrition Program funds.



Said Farah and Abdiwahab Aftin's own financial records will clearly show that they did not use this money to purchase food or "wholesale products." Instead, on February 23, 2021, they wired $80,000 to a tire company in China—Prinx Chengshan Tire Co—for "goods." One week later, Abdiaziz Farah wired another $80,000 in food money from Empire Cuisine & Market to this same Chinese company for "brand new tires."

## 2.   The Shell Companies

The defendants also created and used an array of other companies to conceal and launder their fraud proceeds.

### Empire Enterprises LLC

For example, during the course of the scheme, Abdiaziz Farah created a shell company called Empire Enterprises LLC. Abdiaziz Farah registered Empire Enterprises with the Minnesota Secretary of State on April 5, 2021. The following day, Abdiaziz Farah opened up a bank account in the name of Empire Enterprises and used it to receive and launder the proceeds of the fraud scheme.

Abdiaziz Farah immediately deposited a $432,796 check from ThinkTechAct into his new Empire Enterprises account. The memo line indicated that the money was for "CACFP Food." The check was dated April 3, 2021—two days before Abdiaziz Farah registered the company and three days before he opened a bank account on behalf of the company.



Two weeks later, on April 23, 2021, Abdiaziz Farah wrote a check for $100,000 to MIB Holdings LLC—a shell company created and used by Mahad Ibrahim to receive and launder fraud proceeds. The memo line of the check claimed the payment was for "consulting."



On May 8, 2021, Abdiaziz Farah deposited two more checks totaling more than $700,000 into the Empire Enterprises account. The checks were from Mahad Ibrahim's company, ThinkTechAct. Again, the memo lines indicated the money was for "CACFP Food."




Abdiaziz Farah did not use this money to purchase food. Instead, three days later he again sent a chunk of the funds back to Mahad Ibrahim via his shell company, MIB Holdings. The check for $172,329 claimed that the money was for "program consulting."



One week later, on May 15, 2021, Abdiaziz Farah wrote a $250,000 check from the Empire Enterprises account to a custom home builder that he had hired to build a new, custom home on Prior Lake.



In July 2021, Abdiaziz Farah used $1 million from this Empire Enterprises account to purchase two lakefront lots on Prior Lake on which to build his new, custom home.

In all, Abdiaziz Farah used Empire Enterprises to receive and launder more than $7 million in fraud proceeds, including more than $3 million from ThinkTechAct, more than $2 million from Empire Cuisine & Market, and more than $400,000 from Afrique Hospitality Group.

### Nur Consulting LLC

Abdimajid Nur created his own shell company, Nur Consulting LLC, to receive his share of the fraud proceeds. Abdimajid Nur, who graduated from high school in June 2019, registered Nur Consulting LLC on April 4, 2021. Two days later, he opened an account in the name of his new company and immediately deposited a $30,000 check from Empire Cuisine & Market into the account. The memo line stated that the money was for "consulting."



Over the course of the next 10 months, Abdimajid Nur deposited more than $900,000 into the Nur Consulting bank account, including more than $400,000 in "consulting" payments from Empire Cuisine & Market, $220,000 from Bushra Wholesalers for "staff training" and "project management," and $77,000 from ThinkTechAct for "food service" and "food program" management and for "CACFP Food."

Abdimajid Nur spent his share of the fraud proceeds freely. He used funds to purchase cars. In August 2021, for example, he purchased a 2021 Dodge Ram pickup for $64,000.



Six weeks later, he purchased a 2021 Hyundai Sante Fe.



In July 2021, Abdimajid Nur used fraud proceeds to take a honeymoon to the Maldives, where he stayed in a private villa. He also spent $30,000 in fraud proceeds at a jewelry store in Dubai, again via his shell company Nur Consulting.



During the same period in which he received nearly $1 million from his co-conspirators for his role in the fraud scheme, Abdimajid Nur was also enrolled as a full-time college student at an online college, Herzing University. Abdimajid Nur used proceeds from the fraud scheme to pay an online company to take his college courses for him. Specifically, he paid $12,000 from his shell company, Nur Consulting, to a company called PayMeToDoYourHomework.com, which agreed to take his courses for him, including all homework assignments and exams, with a guaranteed A or B in each course. Abdimajid Nur paid the company approximately $5,000 to take all his Fall 2021 courses for him. In January 2022, he paid another $6,000 to have the company take all his Spring 2022 semester courses.

**MIB Holdings**

Mahad Ibrahim used a company called MIB Holdings LLC to receive and launder proceeds of the fraud scheme. Ibrahim deposited more than $2 million from entities involved in the scheme, including: (a) more than $900,000 from Empire Cuisine & Market; (b) more than $500,000 from Empire Enterprises; (c) more than $500,000 from Bushra Wholesalers; and (d) more than $100,000 from Afrique Hospitality Group. The checks and wire transfers indicated that the payments were for "consulting" and "program operations."

Ibrahim used much of this money to purchase property and build a custom home in Columbus, Ohio.

### 3.    The Spending of the Fraud Proceeds

The defendants spent their fraudulent proceeds freely. They spent millions of dollars purchasing real estate, including property in Minnesota, Kentucky, Ohio, and

Kenya. The government expects to introduce evidence of these property purchases, including title company records and financial records showing the source of the fraudulent proceeds used to make these purchases.

Defendants also used fraudulent proceeds to purchase cars, largely in cash with no financing. The government expects to introduce evidence of these purchases, including car dealership records, car title records, and financial records showing the source of the funds used to make these purchases.

The defendants also used fraud proceeds for personal spending, including to fund luxury travel, purchase jewelry, and otherwise fund their lifestyles. They also used the proceeds of their scheme to invest in other businesses that had nothing to do with feeding Minnesota children. For example, Mahad Ibrahim invested $90,000 in a company that operated an escape room in Orlando, Florida. Mukhtar Shariff used millions of dollars in Federal Child Nutrition Program to hire an architect and contractor to build his event center, Afrique Hospitality Group. Abdiaziz Farah and Abdiwahab Aftin sent more than $900,000 in fraud proceeds to Kenya in order to purchase five condo units in a building being constructed in Nairobi.

In short, defendants used the Federal Child Nutrition Program funds they received as a slush fund to enrich themselves, rather than to feed children.

### D.    The Kickback Scheme

To carry out this massive fraud, defendants Abdiaziz Farah, Said Farah, and Mukhtar Shariff participated in a conspiracy to commit federal programs bribery. They paid bribes and kickbacks to employees of Feeding Our Future and Partners In

Nutrition in exchange for the sponsorship of their fraudulent participation in the Federal Child Nutrition Program.

At trial, the evidence will show that Feeding Our Future, in particular, operated a "pay-to-play" scheme in which individuals seeking to operate fraudulent sites under its sponsorship had to kick back a portion of their fraudulent proceeds to Feeding Our Future employees. Many of these kickbacks were paid in cash or disguised as "consulting fees" paid to shell companies created by Feeding Our Future employees to conceal the true nature of the payments and to make them appear legitimate. At least one witness, a former Feeding Our Future employee, will explain how the pay-to-play scheme worked, including the formation of shell companies, disguised payments, and the creation of a sham, backdated "consulting agreement" at the behest of defendants Abdiaziz Farah and Said Farah. Among other things, this witness will testify about the substantial kickback and bribe payments tendered by defendants Abdiaziz Farah, Said Farah, and Mukhtar Shariff.

### E.    Defendant Abdiaziz Farah's Passport Fraud

On January 20, 2022, federal agents executed multiple search warrants related to this investigation, including searches of both Abdiaziz Farah and Mohamed Ismail's residences. During the searches of their residences, federal agents seized Farah's and Ismail's passports.

Approximately two months later, on March 22, 2022, Farah and Ismail applied for new passports at the Minneapolis Passport Agency in downtown Minneapolis. Both Farah and Ismail lied on their passport applications, claiming that their original passports had been "lost."

Both Farah and Ismail submitted a Statement Regarding a Lost or Stolen U.S. Passport Book and/or Card as part of their application. On the form, Farah again falsely represented that he had lost his U.S. passport. Farah wrote that he "could not find [it] anywhere in my house or car." In response to prompt asking him to "[e]xplain where the loss or theft occurred," Farah answered, "unknown." Similarly, in response to the question as to when the passport was lost or stolen, Farah falsely stated "unknown."

Similarly, Ismail claimed—falsely—that he had lost his passport "at home." He also claimed, falsely, that he had filed a filed a police report in connection with his "lost" passport.

Both Farah and Ismail signed these documents under penalty of perjury, and after receiving a written warning that false statements on his application could result in federal criminal charges.

Based on their false representations, the State Department issued Farah and Ismail new passports that day.

Well knowing that he was a target of the investigation, Farah booked a one-way flight from Minneapolis-St. Paul International Airport on a one-way flight to Nairobi, Kenya departing on March 24, 2022. Farah had booked the one-way ticket a few days prior to submitting his false passport application, on March 16, 2022. Farah ultimately did not board the flight. Approximately one month later, on April 20, 2022, Ismail used his new passport to check in for his flight at the Rochester International

Airport on April 20. Ismail arrived at MSP airport that afternoon and presented his ticket to board his flight bound for Nairobi. FBI agents arrested him on the jetway.

Both Farah and Ismail were charged with making false statements in their applications for a U.S. passport, in violation of 18 U.S.C. § 1542. Ismail has since pled guilty to this count.

## IV.   POTENTIAL LEGAL AND EVIDENTIARY ISSUES

### A.   Summary Testimony and Charts

The United States intends to call law enforcement agents to testify as summary witnesses in its case-in-chief. "The testimony of a summary witness may be received so long as she bases her summary on evidence received in the case and is available for cross-examination." *United States v. Ellefsen*, 655 F.3d 769, 780 (8th Cir. 2011) (quoting *United States v. King*, 616 F.2d 1034, 1041 (8th Cir. 1980)).

In addition, because this case involves voluminous documentary evidence, including bank records and other financial documents, the government intends to offer summary charts into evidence in order to assist the jury. Summary charts are properly admitted when (1) the charts fairly summarize voluminous trial evidence, (2) they assist the jury in understanding testimony already introduced, and (3) the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary. *United States v. Spires*, 628 F.3d 1049, 1052-53 (8th Cir. 2011) (citing Fed. R. Evid. 1006). "Also, summaries may include assumptions and conclusions so long as they are 'based upon evidence in the record.'" *Id.* at 1053.

**B.      Stipulations    and    Self-Authentication    Pursuant    to Federal Rule of Evidence 902**

The parties have discussed foundational stipulations with respect to certain business records that will obviate the need to call custodians of records as witnesses at trial. While the parties are still working through the details of these stipulations, the government is hopeful that the parties will be able to put this stipulation on the record at the pretrial conference.

With respect to any business records for which the defendants are unwilling to stipulate with respect to foundation, the government will be providing notice to defense counsel of its intent to offer these business records pursuant to the self-authentication provisions of Federal Rules of Evidence 803(6) and 902(11). The records will be identified with particularity to the defense in the government's Federal Rule of Evidence 902 notices, and they have all previously been provided to the defense in the government's Rule 16 disclosures. Certifications for these records have also been made available for the defendant's review. The government will also seek to admit certain public records pursuant to the self-authentication provisions of Federal Rules of Evidence 803(8) and 902(1) and (2).

Dated: April 2, 2024                              Respectfully Submitted,

                                                  ANDREW M. LUGER
                                                  United States Attorney

                                                  */s/ Joseph H. Thompson*
                                          BY:     JOSEPH H. THOMPSON
                                                  MATTHEW S. EBERT
                                                  HARRY M. JACOBS
                                                  CHELSEA A. WALCKER
                                                  DANIEL W. BOBIER
                                                  Assistant United States Attorneys