UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-124 (NEB/TNL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **GOVERNMENT'S CONSOLIDATED** |
| | ) | **RESPONSE TO DEFENDANTS'** |
| ABDIAZIZ SHAFII FARAH, | ) | **MOTIONS IN LIMINE** |
| MOHAMED JAMA ISMAIL, | ) | |
| MAHAD IBRAHIM, | ) | |
| ABDIMAJID MOHAMED NUR, | ) | |
| SAID SHAFII FARAH, | ) | |
| ABDIWAHAB MAALIM AFTIN, | ) | |
| MUKHTAR MOHAMED SHARIFF, and | ) | |
| HAYAT MOHAMED NUR, | ) | |
| | ) | |
| Defendants. | ) | |

The United States of America, by and through its attorneys, Andrew M. Luger,

United States Attorney for the District of Minnesota, Joseph H. Thompson, Harry M.

Jacobs, Matthew S. Ebert, Chelsea A. Walcker, and Daniel W. Bobier, Assistant

United States Attorneys, respectfully submits the following consolidated response to

the motions in limine filed by Defendants Abdiaziz Shafii Farah, Mohamed Jama

Ismail, Mahad Ibrahim, Abdimajid Mohamed Nur, Said Shafii Farah,

Abdiwahab Maalim Aftin, Mukhtar Mohamed Shariff, and Hayat Mohamed Nur.

Dkts. ##388, 389, 390, 391, 392, 397, 399, 401, 411, 414, 415, 427, 431, 434.

## I.    Defendants' Motion to Exclude Lay Opinions About Knowledge or Intent (Dkt. #388).

Defendants move to exclude government witnesses from testifying "as to what

the Defendants knew or should have known" regarding the fraudulent nature of their

business conduct or the illegal nature of any funds. Dkt. #388 at 1. They contend such testimony would run afoul of Federal Rules of Evidence 602, 701, and 403. Defendants' arguments fail in light of clear Eighth Circuit law to the contrary.

It is black letter law that "[p]ersonal knowledge or perceptions based on experience" are sufficient foundation for lay opinion testimony under Rules 602 and 701. *In re Air Crash at Little Rock Arkansas on June 1, 1999*, 291 F.3d 503, 515–16 (8th Cir. 2002). As such, a lay witness may offer an opinion about the meaning of a conversation if the witness participated in it, *see United States v. Lomas*, 826 F.3d 1097, 1106-08 (8th Cir. 2016), and "[w]here a witness is in a position to know what the other party meant, a district court does not abuse its discretion in admitting testimony as to her understanding of the meaning of the words used by the other party, *United States v. Fregoso*, 60 F.3d 1314, 1326 (8th Cir. 1995) (cleaned up). This means that, contrary to Defendants' insistence, it is not per se improper for a lay witness to testify about what another person knew or intended. *See United States v. McClintic*, 570 F.2d 685, 690 (8th Cir. 1978) (court did not abuse its discretion in allowing co-conspirator to offer his opinion that defendant was aware that goods were obtained by fraud); *United States v. McMillan,* 600 F.3d 434, 456 (5th Cir. 2010) (lay witnesses may give opinion testimony about a defendant's mental state "based on the witness's perception and that are helpful in understanding the testimony or in determining a fact in issue"); *contra United States v. Hauert*, 40 F.3d 197, 201-02 (7th

Cir. 1994) (Defendants' case focusing on excluded lay opinion concerning "defendant's knowledge about tax laws").

Defendants' invocations of government-disclosed "reports of witness statements" that Defendants contend are "replete with unsubstantiated opinions" do not help their argument. Dkt. #388 at 5. Defendants cite no specific testimony they believe is objectionable, underscoring that such objections to lack of foundation or improper opinion are best handled at trial in response to specific questioning. To the extent Defendants believe at trial that specific testimony the government seeks to elicit lacks foundation, Defendants are free to then object and the Court will be better positioned at that time to rule.

For these reasons, the Defendants' motion should be denied.

## II. Defendants' Motion to Require Specificity As to Defendants and Charges (Dkt. #389)

This motion appears to contain four different requests. Each should be denied.

First, Defendants ask the Court to impose a requirement on the government "to state and clarify with specificity exactly which defendant a piece of evidence is being introduced against, and for which charge or charges." Dkt. #389 at 5. They suggest, for example, that the government "label[] and mark[]" each of the government's proposed 1,500 exhibits "with defendant names." *Id*. This request demonstrates a fundamental misunderstanding of conspiracy law.

A conspiracy is an agreement or an understanding between two or more persons to accomplish by joint action a criminal or unlawful purpose. *See United States v. Hansen*, 791 F.3d 863, 870–71 (8th Cir. 2015) (discussing jury instructions

3

on the "three essential elements of conspiracy"). The essence of the crime of conspiracy is the unlawful agreement between two or more people to violate the law. *See United States v. Francis*, 916 F.2d 464, 466 (8th Cir. 1990) (gist of offense of drug conspiracy is unlawful agreement; once agreement is made conspiracy is complete). Once a conspiracy is established, any acts committed or statements made in furtherance of the conspiracy are admissible as to all other members of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E); *see also United States v. Mickelson*, 378 F.3d 810, 819 (2004) ("Co-conspirator statements are admissible . . . if the prosecution demonstrates that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the declaration was made during the course of and in furtherance of the conspiracy."). That is true even if a defendant was not involved in and had no knowledge of those actions and conversations. *See*, *e.g.*, *Bourjaily v. United States*, 483 U.S. 171, 180–81 (1987) (co-conspirator's out-of-court statements to an undercover agent—in a conversation defendant was not a part of—were properly admitted against the defendant).

Against that backdrop, Defendants' efforts to unnecessarily complicate the exhibits and evidence in this case fall flat. To the extent the actions of one actor within the conspiracy were performed in furtherance of the conspiracy, those actions can indeed be imputed to every other conspirator as evidence of the conspiracy charged. *See id.*

For those instances in which the government seeks to introduce evidence only as to one specific defendant—for example, Mahad Ibrahim's enrollment of

ThinkTechAct or Mind Foundry in the Federal Child Nutrition Program—the appropriate and more administrable approach is to simply use the Eighth Circuit's "Separate Crime" instruction:

> A separate crime is alleged against the defendant in each count of the Indictment. Each alleged offense, and any evidence pertaining to it, should be considered separately by the jury. The fact that you find the defendant guilty or not guilty of one of the offenses charged should not control your verdict as to any other offense charged against him or her. You must give separate and individual consideration to each charge.

Dkt. #423, Proposed Jury Instruction No. 82. That is why the parties have jointly proposed that instruction, which is more than sufficient to address the concern—and to enhance and protect judicial economy and party resources—given that "jurors are presumed to follow the court's instructions." *United States v. Muhammad*, 819 F.3d 1056, 1063 (8th Cir. 2016).

Second, Defendants ask that the government be precluded from "allud[ing]" to evidence that "has been excluded" or that "bears no relevance to the case raised against them individually." Dkt. #389 at 5. Defendants do not specify what evidence, if any, this motion contemplates, but no matter: the government will abide by all exclusionary rulings the Court makes. No in limine ruling is warranted or necessary on this score. To the extent Defendants believe during trial that any particular evidence is not relevant, the Court can no doubt address appropriate objections as they arise.

Third, Defendants ask that the government be prohibited from asking the jurors to "send a message" by holding Defendants guilty and, relatedly, that the government be prohibited from "demonizing the defendants as the faces of food

5

program fraud." Dkt. #388 at 6. The government will do neither. Rather, the government intends to prove that the Defendants are guilty on the basis of evidence admissible against them and will argue only that the conduct of Defendants and their co-conspirators provides the jury the basis to return guilty verdicts. The government is well aware of the ethical and legal limitations on what it may argue at trial and will abide by those limitations.

Finally, Defendants move to preclude the introduction of "other indictments, charges, or conduct" arising out of the government's broader investigation into fraud schemes concerning the Federal Child Nutrition Program, which encompasses other criminal cases currently docketed in this District, to the extent such "indictments, charges, or conduct" do relate to the superseding indictment in this case. Dkt. #389 at 7. This is not an issue requiring a ruling now. The Court to rule on objections, if any, as they arise at trial.

## III.   Defendants' Motion to Restrict Co-conspirator Statements (Dkt. #390)

Defendants move the Court to prohibit the conditional introduction of co-conspirator statements and permit such statements only after the government establishes, for each such statement, that it was made by a co-conspirator during the course and in furtherance of the conspiracy. *See* Dkt. #390 at 3-4. The wooden approach that Defendants request would grind these proceedings to a halt. The government's case concerns an expansive conspiracy involving eight Defendants and numerous additional co-conspirators. If the Court had to first adjudicate pre-trial every single co-conspirator statement that the government wishes to introduce, a likely weeks-long pre-trial hearing would be required.

To avoid such a significant drain on Court and party resources, the Eighth Circuit has long advised, instead, that courts conditionally admit co-conspirator statements:

> For the purpose of providing guidance to the district courts in future trials, we submit that the following procedural steps should be utilized when the admissibility of a coconspirator's statement is at issue, regardless of the nature of the charge or charges:
>
> If the prosecutor propounds a question which obviously requires a witness to recount an out-of-court declaration of an alleged coconspirator, the court, upon a timely and appropriate objection by the defendant, may conditionally admit the statement. At the same time, the court should, on the record, caution the parties (a) that the statement is being admitted subject to defendant's objection; (b) that the government will be required to prove by a preponderance of the independent evidence that the statement was made by a coconspirator during the course and in furtherance of the conspiracy; (c) that at the conclusion of all the evidence the court will make an explicit determination for the record regarding the admissibility of the statement; and (d) that if the court determines that the government has failed to carry the burden delineated in (b) above, the court will, upon appropriate motion, declare a mistrial, unless a cautionary instruction to the jury to disregard the statement would suffice to cure any prejudice. The foregoing procedural steps should transpire out of the hearing of the jury.

*United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978) (cleaned up); *accord United States v. Cazares*, 521 F.3d 991, 997-99 (8th Cir. 2008) (affirming district court's application of "the *Bell* procedure").

The Court should heed the Eighth Circuit's guidance and apply the *Bell* procedure here. Doing so will eliminate Defendants' concern the jury will hear and make its determination on the basis of ultimately inadmissible hearsay, and this

approach accomplishes that goal without compelling the Court and parties alike to extend this matter for weeks or months more. Defendants' motion should be denied.

## IV.    Defendants' Motion to Restrict the Use of "Legal Conclusion" Terms (Dkt. #391)

Defendants move to preclude the government from using certain terms, including "victims," "fraud," and "scams." *See* Dkt. #391 at 1. They argue that such terms are overly prejudicial and cannot be used by anyone other than an expert witness. They are wrong in both respects.

First, Courts have routinely found that such language does not run afoul of Federal Rule of Evidence 403. Such terms, which merely describe the charged conduct, are appropriately used by the government in its arguments to the jury. As the Eight Circuit has explained, "[t]he use of colorful pejoratives is not improper." *United States v. Shoff*, 151 F.3d 889, 893 (8th Cir. 1998) (appropriate for government to describe defendant in opening and closings as a "con man" where that language described the crime).  For the same reason, such terms are also permissible from witnesses on the stand. For example, in *United States v. Lussier*, this Court denied the defendant's motion to preclude the government and its witnesses from using the term "victim," explaining that "[t]he term 'victim' is not inherently prejudicial." No. 18-CR-281 (NEB/LIB), 2019 WL 2489906, at *5 (D. Minn. June 15, 2019). This Court emphasized that "victim" is a term "commonly used in the English language that does not by its nature connote guilt." *Id*.

That ruling accords with decisions by the Eighth Circuit and other Courts of Appeals permitting the use of the term "victim" in the context of jury instructions.

*See United States v. Washburn*, 444 F.3d 1007, 1013 (8th Cir. 2006) (finding that "the use of the term 'victim' in jury instructions is not prejudicial to a defendant's rights"); *Server v. Mizell*, 902 F.2d 611, 615 (7th Cir. 1990) (same); *United States v. Granbois*, 119 F. App'x 35, 38–39 (9th Cir. 2004) (same); *see also United States v. Hsia*, 24 F. Supp. 2d 14, 26-27 (D.D.C. 1998) (refusing to strike words such as "unlawful," "secret," "disguised," "illegal," "covered-up," and "falsely," because those words, read in context, were relevant to the offenses charged and were not overly prejudicial). And, insofar as such descriptive language comes from the mouths of the defendants or their co-conspirators, they underscore the illegality of their scheme. *United States v. Atkins*, 52 F.4th 2022, 753 (8th Cir. 2022) (finding that "the district court did not abuse its discretion in admitting [into] evidence" depictions "of a defendant using vulgar [and] highly inflammatory language" because they "were highly probative of [the defendant's] plan to recruit woman . . . for prostitution").

Second, Defendants suggest that in fraud trials, none of the challenged terms can be uttered by anyone apart from a Rule 702 expert. Defendants invoke no Eighth Circuit authority in support of that proposition, and the government is not aware of any. Testimony is not transmogrified into expert opinion merely because a witness characterizes some part of Defendants' conduct as a "scam"; it is black letter law that lay witnesses can testify to their "perceptions based on [their] experience." *United States v. Turner*, 781 F.3d 374 (8th Cir. 2015); *accord United States v. Espino*, 317 F.3d 788, 797 (8th Cir. 2003) (courts have "latitude [to] permit a witness to state his conclusions based on common knowledge or experience"). Under the law, a witness's

use of such terms is afield of testimony going to the ultimate legal issue in a case. *See Kostelecky v. NL Acme Tool/NL Indus.*, 837 F.2d 828, 830 (8th Cir. 1988) (Defendant's negligence case affirming district court exclusion of testimony that accident "was caused by the injured's own conduct").

And, contrary to Defendants' suggestion, a witness's informal use of a term that may also be legal in character does not inexorably turn that testimony into improper "legal conclusion" evidence. *See United States v. Locke*, 643 F.3d 235, 242 (7th Cir. 2011) (holding witnesses' use of the word "fraud" in the colloquial sense, "employing the vernacular of their financial professions," was not improper lay testimony); *United States v. Hearst*, 563 F.2d 1331, 1351 (9th Cir. 1977) (testimony not objectionable when average laymen would understand the terms used and ascribe them the same basic meaning intended by the witness).

The Court should reject Defendants' attempt to shoehorn garden-variety, lay witness testimony into Rule 702.

## V. Defendants' Motion to Exclude Undisclosed Expert Testimony (Dkt. #392)

Defendants acknowledge that the government did not disclose any expert testimony—a fact that should moot this motion—yet they insist that the government's trial disclosures are "replete with expert opinions." Dkt. #392 at 1. Not so. The government will not seek to introduce any expert opinions at trial.

From their read of the government's witness list, Defendants challenge essentially three categories of testimony. As discussed below, none of these categories represents expert opinion, however, so Defendants' motion should be denied.

(1) *"Forensic accountants" called to provide "[f]inancial analysis concerning [the] Federal Child Nutrition Program."* Dkt. #392 at 2. The government intends to call three forensic accountants—who also have served as agents in this investigation—chiefly to testify to certain summaries of Defendants' business records collected during the investigation of this case. Those summaries represent, for example, all of the money purportedly spent by Defendants toward the purchase of food and all of the money provided to Feeding Our Future and Partners In Nutrition through the Federal Child Nutrition Program. As such, the testimony the government intends to offer through these forensic accountants is simply summary—the very kind of business-records summation routinely allowed by lay witnesses. *See, e.g.*, *Howard v. Cassity*, No. 4:09CV01252 ERW, 2015 WL 410611, at *7 (E.D. Mo. Jan. 29, 2015) ("Summarizing financial records, even voluminous financial records, is permissible lay testimony under Rule 701."); *United States v. Hamaker*, 455 F.3d 1316, 1331 (11th Cir. 2006) (Government permitted to introduce FBI Financial Analyst as lay witness where he "did not testify . . . based on his financial expertise," but rather "simply reviewed and summarized over seven thousand financial documents, primarily . . . Quickbooks records, time sheets, invoices, and check stubs); *United States v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002) (FBI financial analyst properly testified as a lay witness even where his testimony "summarized business records and client lists and presented them in condensed form"). The forensic accountants will not offer any expert opinion, nor do the summaries they will discuss require any

"scientific, technical, or other specialized knowledge" to create or understand.[1] Fed. R. Evid. 702(a).

To the extent Defendants suggest that exclusion of such testimony (as purportedly undisclosed expert opinion) is necessary to avoid any "surprise," they are wrong. The summaries the government intends to introduce through these accountants were compiled from business records created by or, at least, possessed by Defendants. Defendants have had in their possession for years the figures and records that were simply collected into the summaries Defendants now challenge. Moreover, the involvement of FBI forensic accountants likewise is no surprise to the defendants. The affidavits supporting the issuance of search warrants in January 2022 discuss the involvement of forensic accountants in identifying "companies that were receiving a suspiciously high amount of [Federal Child Nutrition Program] reimbursements" and "obtain[ing] records of bank account used by these companies to receive Federal Child Nutrition Program funds." *See, e.g.*, 22-mj-0009 TNL ¶ 43. The affidavits explained that their "review of these records showed that the companies used little, if any, of this money to purchase food or provide meals to underprivileged children . . . [but instead] transferred the money among several companies in an order to launder and conceal the source and use of the funds . . .

---

[1] Because the government's accountants will not offer any expert opinions, Defendants' case cites are off-point. *See United States v. Roy*, 04-cr-477 (D. Minn. Feb 21, 2006) (exclusion of tardily-disclosed expert); *United States v. Davis*, 244 F.3d 666 (8th Cir. 2001) (exclusion of tardily-produced DNA evidence given defendants may have otherwise retained an expert to examine it); *United States v. Causey*, 748 F.3d 310, 318-19 (7th Cir. 2013) (exclusion of undisclosed expert testimony on "industry practice for procuring closing numbers" in real property sales); *United States v. Hoffecker*, 530 F.3d 137 (3d Cir. 2008) (exclusion of tardily-disclosed experts on "metals markets" and Bahamian law).

[and] then used much of the funds to purchase real estate, cars, and other items." *Id.* Indeed, many of the summary charts showing the money trail that the government intends to introduce at trial were included in these search warrant affidavits. *See, e.g., id.* ¶¶ 71, 75, 78. Defendants cannot reasonably invoke unfair surprise or prejudice.

(2) *Witnesses called to "compare various food programs administered by school districts" with those supposedly administered by defendants.* Again, these are fact witnesses who will not be offered for any expert opinion. Any "comparisons" such witnesses describe will be of the simple kind anyone can make. Fed. R. Evid. 701 (lay testimony may include that which is "rationally based on the witness's perception").

(3) *Witness called to discuss a Sponsor's "oversight of distribution sites, requirements, staff structure, and reimbursements" and a witness "discussing the reimbursement programs."* These are fact witnesses who will offer only lay testimony. The basis of Defendants' objection to this witness is unclear.

## VI. Defendants' Motion for "Additional Jury Protections" (Dkt. #397)

Defendants' next motion combines five requests. They are: (1) for attorney-led voir dire; (2) to award each individual Defendant 3 peremptory strikes, for a total of 24; (3) to sequester the jury from media coverage; (4) to impose a gag order on the parties; and (5) for entry of an order requiring "existing public statements" about the trial to be cleansed from the Internet. The Court's recent instruction has mooted the first two requests. The rest should be denied.

*Attorney-Led Voir Dire & Peremptory Challenges.* These two requests are now moot, given the Court's instructions at the pre-trial conference on April 4, 2024. Per

the Court's instruction, there will be no attorney-led voir dire and Defendants may use up to 18 total peremptory challenges.

*Jury Sequestration from Media Coverage.* The proposed jury instructions already include not one, but two directions—one before trial and one before each recess—that jurors are to avoid media coverage during the pendency of trial. Those instructions are extensive and specific. For example:

> *Sixth*, do not do any research—on the Internet, via electronic devices, in libraries, in the newspapers, or in any other way—or make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other device to search for or to view any place discussed in the testimony. Also, do not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge.

> *Seventh*, do not read any news stories or articles in print, or on the Internet, or in any blog, about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it. In fact, until the trial is over, I suggest that you avoid reading any newspapers or news journals at all, and avoid listening to any television or radio newscasts at all. I do not know whether there might be any news reports of this case, but if there are, you might inadvertently find yourself reading or listening to something before you could do anything about it. If you want, you can have your spouse or a friend clip out any stories and set them aside to give you after the trial is over. I can assure you, however, that by the time you have heard the evidence in this case, you will know what you need to return a just verdict.

> The parties have a right to have the case decided only on evidence they know about and that has been introduced here in court. If you do some research or investigation or experiment that we don't know about, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, including the oath to tell the truth and by cross-examination. All of the parties are entitled to a fair trial, rendered by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide a case based on information not presented in court, you will

have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Remember, you have taken an oath to abide by these rules and you must do so. Failure to follow these instructions may result in the case having to be retried and could result in you being held in contempt.

Proposed Jury Instruction No. 7; *see also* Proposed Jury Instruction No. 13.

The government submits that no further instruction or prophylaxis is necessary. *See United States v. Muhammad*, 819 F.3d 1056, 1063 (8th Cir. 2016) ("Jurors are presumed to follow the court's instructions.").

*Gag Order.* The government does not intend to hold any press conference on the issues at bar during the pendency of this trial or jury deliberations. The imposition of a gag order is an extreme, and here unwarranted, remedy. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) ("A gag order is a prior restraint on speech and, as such, is 'the most serious and least tolerable infringement on First Amendment Rights.'"); *Nelle as Next Friend of B.N. v. Huntsville Sch. Dist.*, No. 5:21-CV-05158, 2021 WL 6135690, at *2 (W.D. Ark. Dec. 29, 2021) (refusing to impose gag order, as a "disfavored remedy," on parties); *Graham v. Weber*, No. CIV 13-4100, 2015 WL 5797857, at *10 (D.S.D. Oct. 5, 2015) (substantially same). No such order should issue here.

*Cleansing Order.* Defendants ask the Court to require the parties to cleanse the Internet of any "extrajudicial statements"; specifically, Defendants take issue with a video, available on YouTube, of a press conference held by the U.S. Attorney. Dkt. #397 at 5. But the government did not post that video online—the news media did. Implementing the take-down order Defendants request is logistically impossible

15

and constitutionally impermissible. In all events, any prejudice Defendants envision as emanating from that video will be avoided through the rigors of jury selection. Finally, the parties have jointly proposed that the Court give an instruction, as appropriate, on this very issue. *See* Proposed Jury Instruction No. 9 ("You of course must lay aside and completely disregard anything you may have read or heard about the case outside of this courtroom[.]"); *cf. Muhammad*, 819 F.3d at 1063. Further action is unnecessary and unwarranted.

## VII.  Defendants' Motion to "Exclude Evidence Relating to Comparison of Food Program Site Rosters to School District Enrollment Rosters" (Dkt. #399)

Defendants' next motion principally targets one of the government's exhibits which, Defendants that "seek[s] to compare rosters of names from food program sites with rosters showing school district enrollment[.]" Dkt. #399 at 1. They contend this exhibit should be precluded by Rules 401 and 403 and because they believe that comparing two lists of names is a task that cannot be accomplished by anyone less than a Rule 702 expert. Defendants are wrong on each point.

As discussed in the government's trial brief, the defendants submitted rosters purporting to contain the names and ages of children receiving meals at their various sites. Many of these names contain 2,000 or more names, along with check marks indicating the days on which each child received meals at the various sites. Perhaps unsurprisingly, the rosters indicated that each child received a meal every day, without exception. The names on the rosters are fake, often obviously so.

16

At trial, the government intends to show that the names on the defendants'
rosters were fake. Among other things, the government will do so by comparing the
names of children the defendants' claimed to have served meals with the names of all
children attending school in the local public school district. Such a comparison shows
that essentially none of the names on the defendants' rosters were of real kids who
attended school in the local school district.

Neither Rule 401 nor 403 precludes this comparison. Defendants kept and
submitted to their respective Sponsors rosters containing names of children that
purportedly received food from each site. That those rosters have virtually no overlap
with the names of children enrolled in the school districts those sites served. This is
squarely relevant to the case, as the government intends to prove that the site rosters
were phony, the student names they included made up, and that Defendants and
their co-conspirators manufactured both to further their scheme. For the same
reasons, introduction of this comparison is not unfairly prejudicial under Rule 403.

Even so, Defendants contend that these comparisons are "meaningless"
because of certain purported changes to the Program over time. According to
Defendants, the program-site rosters (which are typed, not hand-written) were
generated wholesale not by Defendants, but by anonymous "adults" who "would show
up to a food program site, tell the staff how many children they had and give them
the children's names, and then receive a number of meals for each child they
reported." Dkt. #399 at 4. Defendants further contend that these anonymous adults
could have been (and, given the evidence, must have been) nearly exclusively picking

up food for children who lived outside the school district in which each site is located. *See id.* at 4-5.

At trial, Defendants may attempt to adduce evidence that at some point during the program, scores of adults began pouring into Defendants' sites to pick up millions meals on behalf of numerous children. Should they succeed, the jury no doubt will find the government's comparison less convincing. In the absence of such proof, however, the jury may well conclude otherwise. Defendants' Rule 401 and 403 objections are arguments to the weight that should be accorded to the government's comparisons; they are not valid objections to admissibility in the first instance.

Second, Defendants object that only Rule 702 experts can compare one list of names to another and note the extent of overlap between the two. Defendants say that exercise requires "specialized and technical knowledge." *Id.* at 7. It is not clear why. Lay witnesses are permitted to summarize business records and to testify to their "perceptions based on [their] experience." *United States v. Turner*, 781 F.3d 374, 388 (8th Cir. 2015). That is all the government's anticipated testimony and exhibits concern. To the extent Defendants contend that such lay testimony "could not be relevant without the extra step of an expert opinion that the difference matters," they are wrong again. All parties are entitled to argue at closing over the import of fact evidence presented at trial. If Defendants' objection were the rule, *no* fact evidence could ever be introduced: by their lights, evidence either "matters," but can only be introduced by an expert, or else the evidence is "not relevant," and thus inadmissible. That contention, and Defendants' motion, should fail.

## VIII. Defendants' Motion to Preclude Government's Proposed "Willful Blindness" Instruction (Dkt. #401)

Defendants move the Court to preclude the Eighth Circuit's "willful blindness" instruction. *See* Proposed Jury Instruction No. 80. They make two arguments: (1) that pretrial publicity in this case has purportedly "primed" the venire; and (2) that the evidence that will be adduced at trial ultimately will not support that instruction. *See* Dkt. #401 at 3-7. The first argument is wrong and the second should be rejected as premature.

First, as discussed above, the purported prejudice that Defendants envision will be avoided through the rigors of jury selection. Moreover, the parties have jointly proposed that the Court give an instruction, as appropriate, on this very issue. *See* Proposed Jury Instruction No. 9 ("You of course must lay aside and completely disregard anything you may have read or heard about the case outside of this courtroom[.]"). Jurors are presumed to heed such instructions. *United States v. Muhammad*, 819 F.3d 1056, 1063 (8th Cir. 2016).

Second, this motion is premature. While the parties have submitted draft jury instructions, whether the government ultimately requests that willful blindness be included in the final jury instructions depends largely on how the evidence unfolds at trial. Moreover, there is every indication—particularly in light of Defendants' assertions that a cornerstone of their scheme, the fake rosters, were populated not by Defendants themselves but rather over months by scores of anonymous third parties—that such an instruction will be appropriate and necessary at the end of trial. *United States v. King*, 898 F.3d 797, 807 (8th Cir. 2018) ("An instruction on

willful blindness is especially appropriate when the defendant denies any knowledge of a criminal scheme despite strong evidence to the contrary.") (cleaned up).

## IX. Defendant Mohamed Jama Ismail's Motion to Supplement Voir Dire (Dkt. #411)

Defendant Mohamed Jama Ismail moves for an order permitting his counsel to supplement the Court's voir dire examination. This motion is now moot, given the Court's instruction on April 4, 2024 that no attorney-led voir dire will be allowed in this matter.

## X. Defendants' Motion to Limit the Scope of Prior Act Evidence (Dkts. ##414, 415)

Defendant Mohamad Jama Ismail moves pursuant to Rule 403 for exclusion of evidence of the conduct leading to his conviction for Use of a Passport Secured Through False Statements (in violation of 18 U.S.C. § 1542). *See* Dkts. 414, 415. His motion ignores longstanding caselaw holding that evidence of flight is admissible to show consciousness of guilt. *See, e.g.*, *United States v. Thompson*, 690 F.3d 977, 991 (8th Cir. 2012) ("[I]t is today universally conceded that the fact of an accused's flight . . . [is] admissible as evidence of consciousness of guilt, and thus of guilt itself."); *United States v. Davis*, 867 F.3d 1021, 1030 (8th Cir. 2017) (same); *see also United States v. Howard*, 977 F.3d 671, 676 (8th Cir. 2020) (affirming district court's refusal to exclude evidence of flight as unfairly prejudicial under Rule 403).

Defendant Ismail's conduct has all the hallmarks of a guilty target trying to escape justice. In January 2022, federal agents seized Ismail's passport during the execution of a federal search warrant on his home. The government then informed Ismail, through counsel, that he was a target in the Feeding Our Future

investigation. Within two months, Ismail had applied for a new U.S. passport, falsely claiming in the process that his original passport had been lost. A few days after Ismail received a replacement passport due to his misrepresentations, he booked a flight from Minnesota to Nairobi, Kenya. He boarded that flight equipped with two carry-on bags and five full-sized suitcases in checked luggage, but federal agents arrested him on the jetway before the plane could take off.

These details are highly probative of Ismail's consciousness of guilt. The jury would be deprived of this evidence if, as Ismail requests, discussion at trial of his conviction is restricted to "the crime's name, place, and disposition." Dkt. #415 at 2. Such restriction is not required or appropriate under Rule 403, and clear Eighth Circuit law approves of admissibility. The motion should be denied.

## XI.   Defendants' Motion to Preclude Unredacted Exhibit (Dkt. #427)

The government does not intend to introduce at trial the portions of this exhibit—proposed exhibit No. P-18—to which Defendants object. The government accordingly does not oppose this motion.

## XII.   Defendants Mahad Ibrahim, Abdiaziz Farah, and Mukhtar Shariff's Motion to Exclude 404(b) Evidence (Dkt. #431)

Defendants Mahad Ibrahim, Abdiaziz Farah, and Mukhtar Shariff move to exclude evidence concerning money Defendant Abdiaziz Farah sent from Gateway Academy—a charter school he founded and worked at for years—to two companies, A&E Logistics and Mind Foundry, founded by Defendants Mukhtar Shariff and Mahad Ibrahim. Defendants contend this subject could not possibly be broached

without delving into "complex" and "detailed" facts from a broad swath of additional witnesses, necessarily adding "a week or more of trial time." Dkt. #431 at 3. Not so.

The government does not intend to delve into any of these details at trial nor even mention Gateway Academy in opening. However, the government does intend to present significant evidence concerning A&E Logistics and Mind Foundry—two of the shell companies Defendants used to launder money in furtherance of the charged scheme. Such conduct is intrinsic to the charged crimes (defeating Defendants' Rule 404(b) concerns). Because the government will need to introduce evidence of these companies' financials, the jury will see, and need to hear, brief explanation concerning, the transfers to those companies from Gateway Academy. All the government intends to introduce on this score, however, is that Gateway Academy was an entity founded and controlled by Abdiaziz Farah.

This is not an issue requiring a ruling now. The government does not intend to plumb Gateway Academy's background in the manner Defendant supposes, and to the extent any description of Gateway incidentally introduced at trial, the government will provide sufficient notice to Defendants and the Court for the Court to rule on any objections Defendants wish to raise.

## XIII.  Defendant Abdimajid Nur's Motion to Preclude Evidence (Dkt. #434)

Defendant Abdimajid Nur moves to exclude: (1) evidence that Defendant Nur, through the shell company Nur Consulting LLC, used proceeds from the alleged fraud scheme to pay a website called PayMeToDoYourHomework.com to take Mr. Nur's college courses for him; and (2) certain evidence of Defendant Nur's spending and

personal finances, for example relating to tickets purchased for Timberwolves games and for international travel.

Defendants' first contention misses the mark. He asserts that his dissipation of fraud proceeds through Nur Consulting LLC cannot qualify as admissible intrinsic evidence of his fraud unless Nur Consulting *also* was "involved in the alleged fraud." Dkt. #434 at 2. Defendant cites no authority for this proposition, which in any event identifies a distinction without a difference. The superseding indictment alleges that Abdimajid Nur "created Nur Consulting LLC in or about April 2021 to receive and launder Federal Child Nutrition Program funds from Empire Cuisine and Market, ThinkTechAct, and other entities involved in the scheme to defraud" and that Abdimajid Nur "used Nur Consulting to receive and launder more than $800,000 in Federal Child Nutrition Program funds between approximately April 2021 and January 2022." Dkt. #57 ¶ 25; *see also id.* ¶¶ 114-22 (describing Abdimajid Nur's use of Nur Consulting LLC to . . .). The superseding indictment also charges that Abdimajid Nur used Nur Consulting to "to launder funds for Empire Cuisine and Market" and that "NUR used Federal Child Nutrition Program funds to fund personal spending." Dkt. #57 ¶ 163; *see also id.* at Counts 34 and 35 (alleging that Abdimajid Nur used Nur Consulting to purchase a Dodge Ram pickup truck and Nissan Ultima car).

The government intends to prove (and Defendant's motion seems to acknowledge) that Nur Consulting was a shell company and an alter ego of Defendant Nur himself. *See* Dkt. #434 at 1 (referring to "the shell company Nur Consulting

23

LLC"). It makes no difference that he effected payment (using fraud proceeds) to PayMeToDoYourHomework.com through Nur Consulting. Such use of fraud proceeds is plainly "inextricably intertwined with the crime charged" and thus, by Defendants' own lights, is admissible as intrinsic evidence. *Id.* at 1 (quoting *United States v. Guzman*, 926 F.3d 991, 1000 (8th Cir. 2019)).

Defendant's second contention—that evidence of his "personal spending or lifestyle" is inadmissible under Rules 404(b) and 403—is also wrong, as even his own authority illustrates. First off, as explained above, the indictment alleges that Abdimajid Nur used Nur Consulting to launder and spend the proceeds of his fraud scheme. Therefore, the government must prove that he used the company in this manner. Moreover, lifestyle evidence—that a defendant spent, or spent lavishly—is admissible to show motive. *See United States v. Mitchell*, 31 F.3d 628, 631 (8th Cir. 1994) (evidence of accomplice's lifestyle was relevant to motive of avoiding currency reporting); *see also United States v. Carrera*, 259 F.3d 818, 829 (7th Cir. 2001) ("Expensive trips, gambling, and other instances of free spending and high living may be pertinent in crimes involving a motive of enrichment."). Defendant's citation to *United States v. Jackson-Randolph* is in accord. 282 F.3d 368, 378-80 (6th Cir. 2002) (affirming district court decision to allow lifestyle evidence of motive and stating that government need not demonstrate a "direct connection" between such evidence and illegitimate sources).

Here, the government intends to prove that Defendant Nur and his co-Defendants joined in a conspiracy to defraud a federal program out of millions of

dollars for their own benefit. Evidence of Defendant Nur's exorbitant spending—including on a honeymoon to the Maldives and floor seats at NBA games—is relevant to and probative of his motive of self-enrichment. *See Mitchell*, 31 F.3d at 631; *Carrera*, 259 F.3d at 829.

Defendant's motion targets only evidence that is plainly intrinsic of the fraud charged. It should be denied.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny Defendants' motions in limine.

Date: April 5, 2024                    Respectfully Submitted,

                                        ANDREW M. LUGER
                                        United States Attorney

                                BY:    /s/ *Joseph H. Thompson*
                                        JOSEPH H. THOMPSON
                                        MATTHEW S. EBERT
                                        HARRY M. JACOBS
                                        CHELSEA A. WALCKER
                                        DANIEL W. BOBIER
                                        Assistant U.S. Attorneys