UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 22-CR-124 (7) (NEB/TNL) |
| Plaintiff, | |
| vs. | **DEFENDANT'S MOTION FOR RELEASE PENDING SENTENCING** |
| MUKHTAR MOHAMED SHARIFF, | |
| Defendant. | |

Mukhtar Mohamed Shariff, through counsel, respectfully moves the Court for an Order allowing his release pending sentencing.  We ask that he be released from the custody of the United States Marshal Service based on the developments and changed circumstances outlined below.  These facts show by clear and convincing evidence that Mr. Shariff poses neither a risk of flight nor a danger to the community.  As recommended by the Office of Probation and Pretrial Services, he should be released on the conditions previously imposed.[1]  There is neither claim nor evidence that he has violated any of these.

---

[1] "If found guilty. given the defendant's general compliance on supervision, this officer would recommend that he be continued on bond under the same terms and conditions previously imposed." (ECF 457).

## INTRODUCTION

On June 7, 2024, the jury in this case convicted Mr. Shariff of four of the six counts charged against him in the superseding indictment in this case. (ECF 57, 551).  He was detained before the verdict, at the conclusion of a detention hearing on June 3, 2024.  (ECF 540, 547).  His detention was continued in a post-verdict, text-only order.  (ECF 552).

In explaining its decision to detain Mr. Shariff, the Court stated that the evidence and case circumstances showed an alleged scheme to bribe a juror posing concerns of juror safety.  (ECF 547 at p. 8).  The Court did specifically note that "[i]f additional facts come to light about the alleged bribery scheme, the Court can and will reconsider its decision." (Id. at p. 9).  The defense noted and reserved its right to return to the question of release as new information developed. That time has come.

## FACTS

On September 13, 2022, a federal grand jury returned a 43-count Superseding Indictment against Mukhtar Shariff and seven co-defendants,[2]

---

[2]      Co-defendants, listed in the following order, include Abdiaziz Shafii Farah, Mohamed Jama Ismail, Mahad Ibrahim, Abdimajid Mohamed Nur, Said Shafii Farah, Abdiwahab Maalim Aftin, and Hayat Mohamed Nur. Mr. Shariff is the seventh of eight nonalphabetically listed defendants. (Id.).

charging them with participating in a $40 million scheme to defraud a collection of programs it referred to as the Federal Child Nutrition Program. (ECF 57).  Among other things, the indictment alleged that this group of defendants fraudulently misappropriated $40 million in program funds by creating dozens of shell companies to enroll in the Program as Federal Child Nutrition sites and falsely claiming to serve meals to thousands of children a day from April 2020 to January 2022.  (Id. at p. 4).  Mr. Shariff was specifically charged with six counts, which include conspiracy to commit wire fraud (Count 1), wire fraud (Count 8), conspiracy to commit money laundering (Count 20), money laundering (Count 31), conspiracy to commit federal programs bribery (Count 13), and federal programs bribery (Count 15). (ECF 57).

On April 22, 2024, a trial of seven of these defendants commenced in the United States District Court for the District of Minnesota before the Honorable Nancy E. Brasel.[3]  (ECF 549 at ¶ 2).  During voir dire, counsel for the government, counsel for the defense, and the seven defendants had access to the names of potential jurors via "juror lists" provided by the Court.  (Id. at ¶ 4).  During the first week of trial, a jury was selected and seated.  (Id. at ¶ 3).

---

[3]  Abdiaziz Shafii Farah, Mohamed Jama Ismail, Abdimajid Mohamed Nur, Said Shafii Farah, Abdiwahab Maalim Aftin, Mukhtar Mohamed Shariff, and Hayat Mohamed Nur. (Id.)

Upon conclusion of voir dire, the Court instructed counsel and the seven defendants to return their juror lists. (Id. at ¶ 4).  Despite the Court's instruction, two of lists were not returned. (Id. at ¶ 5).  The numbering affiliated with the missing lists did not correspond with the lists distributed to Mr. Shariff's table or team.  (Id.).  Further, upon information and belief, counsel for Mr. Shariff and Mr. Shariff himself returned the juror lists made available to them in accordance with the Court's instruction.  (Id. at ¶ 6).  Mr. Shariff did not write down or otherwise record the name or information of any prospective or seated juror.  (Id.).

Throughout the trial, the general public has lacked access to the jurors' names, and no juror has been referred to by name on the record.  (ECF 547 at p. 5).  Among those selected to serve in the trial was Juror #52.  (ECF 549 at ¶ 3).

On Monday, June 3, 2024, the day trial was scheduled to conclude, the Court, counsel for the government, and counsel for the defense learned of an attempt to bribe Juror #52.  (ECF 547 at p. 4).  Assistant United States Attorney Joseph Thompson represented to the Court and defense counsel that an investigation initiated by the Spring Lake Police Department revealed that a woman had approached the home of Juror #52 during the evening of June 2,

2024, and handed a gift bag containing $120,000 cash to a relative of Juror #52 that had answered the door.  (Id.).  Mr. Thompson further stated that the woman, who had used Juror #52's first name, instructed the relative to tell Juror #52 there would be more "presents" to come, *if the juror voted to acquit all Defendants*.  (Id.).

During the June 3, 2024, proceedings, the Court Ordered that the defendants surrender their cell phones to law enforcement, to effectively "freeze" the scene pending a search warrant application.  (Search Warrant and application, Docket No. 24-mj-382, ECF 1, at ¶ 19).  Following a detention hearing later that day, the Court further ordered that the defendants be immediately detained by the United States Marshal Service pending a verdict, due to concerns of jury tampering, and ultimately, juror safety.  (ECF 547 at pp. 8-9)

On June 3, 2024, FBI Special Agent Travis Wilmer applied for a search warrant, signed by the Honorable Elizabeth Cowan Wright, to search the seven defendants' cellular devices for evidence related to the attempted bribery of Juror #52.  (Docket No. 24-mj-382, ECF 1).  In relevant part, the application states:

> On June 2, 2024-the night before trial was set to conclude-at approximately 8:50pm, a woman approached the home of Juror #52 and

rang the doorbell.  Juror #52 was not home at the time.  A relative of the juror answered the door.  The relative described the woman as a black woman, possibly Somali, with an accent, wearing a long black dress.  The woman handed a gift bag to the relative and said it was a present for Juror #52.  The woman used Juror #52's first name.  *The woman told the relative to tell Juror #52 to say not guilty tomorrow and there would be more of that present tomorrow.*  After the woman left, the relative looked in the gift bag and saw it contained a substantial amount of cash.  When Juror #52 returned home and was told of the encounter, Juror #52 immediately called 911 to report the incident . . ..

(Id. at ¶ 18 (emphasis added)).

Prior to June 3, 2024, Mr. Shariff had never been detained.  Indeed, the government did not seek Mr. Shariff's detention during his September 20, 2022, initial appearance, and he has been on release status under minimal conditions of supervision throughout the case.  (See ECF 108).  The Office of Probation and Pretrial Services also recommends if found guilty, Mr. Shariff be continued on bond under the same terms and conditions previously imposed, given Mr. Shariff's general compliance on supervision.  (ECF 452 at p. 2).[4]

Mr. Shariff currently remains in the custody of the United States Marshal Service.  Since his detainment, no evidence has been presented

---

[4] The conditions include, among other things, surrendering of his passport and making no effort to obtain a new passport. (Id.).

suggesting that Mr. Shariff was involved in the attempt to bribe Juror #52. The FBI has, however, since raided the home of defendant Abdiaziz Farah. Mr. Shariff, through counsel, has requested that the Government produce the application in support of this search warrant as it is sure to provide additional facts about the alleged bribery scheme. As of the filing of the motion, the Government has not provided the requested information. It is known, however, that law enforcement has not searched Mr. Shariff's home in connection with the alleged bribery scheme, and we believe that the facts alleged in the warrant and its supporting documentation will support Mr. Shariff's release.

## ANALYSIS

As augmented by the developments since the Court last considered the questions of release and detention in this case, the facts establish by clear and convincing evidence that Mr. Shariff is neither a risk of flight nor a danger to the community, let alone that he is such a serious risk that detention is the only recourse to reasonably assure public safety and his future appearances. Pursuant to 18 U.S.C. § 3153, the provisions of which

apply in the aftermath of the verdicts, he should be released pending sentencing.

§ 3153 calls for release pending sentencing in the presence of "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community . . .." When such a finding is made, the Bail Reform Act calls for release on personal recognizance or unsecured appearance bond, or release on conditions. 18 U.S.C. §§ 3143, 3142 (b) and (c).

> If the judicial officer determines that [personal recognizance] release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer **shall order** the pretrial release of the person . . . subject to the **least restrictive** further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community . . .[5]

The language of the statute is mandatory: where applicable, the court "shall order the pretrial release" of the defendant unless the court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of . . . the community." See 18 U.S.C. §§ 3142 (b), (c) & (e).

---

[5]     18 U.S.C. § 3142(c)(1) (emphasis added).

8

The bail statute does not require a guarantee that a defendant will appear as required and that their release poses no threat to the community. All that is required is an "objectively reasonable" assurance that the defendant will appear.  See, e.g., *United States v. Orta*, 760 F.2d 887, 892 (8th Cir. 1985) (en banc); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

> The structure of the statute mandates every form of release be considered before detention may be imposed.  That structure cannot be altered by building a 'guarantee' requirement atop the legal criterion erected to evaluate release conditions in individual cases.

*Orta*, 760 F.2d at 892.

### Nature and Circumstances of the Offense

On September 13, 2022, a federal grand jury returned a 43-count Superseding Indictment against Mr. Shariff and seven others, charging defendants with participating in a $40 million scheme to defraud the federal government.  Mr. Shariff was charged with six counts, including conspiracy to commit wire fraud and wire fraud, conspiracy to commit money laundering and money laundering, and conspiracy to commit federal programs bribery and federal programs bribery.  The nature and circumstances of these charged offenses are non-violent, white-collar offenses.  Indeed, at no time prior to

June 3, 2024, had Mr. Shariff's detention been sought or ordered.  He was supervised, without significant incident, since September 13, 2022.  Concerns of flight and dangerousness have never been raised, and no modifications of his release conditions have been pursued.

Moreover, the issue under the Bail Statute is not whether Mr. Shariff committed a serious offense but whether it is likely that he will commit new crimes if he is released, indeed, if that risk is so high that it cannot be mitigated by restrictions short of incarcerating him.  See *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (detention finding "cannot be based on evidence that he has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future misconduct"); *United States v. Jeffries*, 679 F. Supp. 1114, 1118 (M.D. Ga 1988) (danger to community in narcotics context is danger of continued trafficking; thus, "focus should be on future conduct").

In other words, is he a danger now?  The developments over the course of the past week, including the verdicts, show that he is not.

Until June 3, 2024, Mr. Shariff presented no concerns of flight or danger to the community.  Mr. Shariff's detainment was precipitated solely by the attempted bribery of Juror #52, for which there is no evidence to suggest Mr.

Shariff was involved. During the proceedings on Monday, June 3, 2024, the government represented to the Court and counsel, among other things, that the woman who appeared at Juror #52's home with a $120,000 bag of cash, instructed the juror's relative to tell Juror #52 there would be more if the juror "voted to acquit all Defendants". Such commentary strongly implied the alleged bribe was made on behalf of all defendants. In actuality, FBI Special Agent Wilmer's search warrant application explicitly states "the woman told the relative to tell Juror #52 to *say not guilty tomorrow* and there would be more of that present tomorrow." As compared to the government's broad and sweeping "vote to acquit" statement, the search warrant application's "say not guilty" language is more narrowly tailored and less likely representative of all defendants.

The government further represented to the Court and counsel that the woman had used Juror #52's first name, information only accessible to counsel and the seven defendants. In doing so, the government insinuated the alleged bribery attempt had to have been carried out by one of the seven defendants. Mr. Shariff does not have access to Juror #52's personal information. Upon conclusion of voir dire, counsel for Mr. Shariff, as well as Mr. Shariff himself, returned the juror lists made accessible to them in

accordance with the Court's instruction.  The numbering affiliated with the two missing juror lists did not correspond with the lists distributed to Mr. Shariff's table.  Furthermore, Mr. Shariff never wrote down or otherwise recorded the name or information for any prospective or seated juror.  Mr. Shariff therefore does not have access to Juror #52's personal information, information necessary to carry out the alleged bribery scheme.

Finally, despite his cellular device being within the FBI's custody over the last week, there has been no evidence that Mr. Shariff was involved in the attempt to bribe Juror #52.  The FBI has, however, since raided the home of defendant Abdiaziz Farah.  Mr. Shariff's home was not raided.  This strongly suggests that the investigation conducted to date has not revealed evidence indicating or suggesting that Mr. Shariff was involved in the alleged bribery attempt.  Mr. Shariff's detention is therefore unnecessary.  He is not a danger to any juror, or to the community in general.

1History and Characteristics of the Offender1

The uncontested details of Mr. Shariff's life and background are such that the Court can find clear and convincing evidence that his release poses neither risk of flight or danger, and that any concerns can be addressed by conditions short of incarceration.  Mr. Shariff emigrated to the United States

with his family at the age of five after having resided in a refugee camp during the outbreak of the Somali Civil War. Accordingly, his ties to the community run deep. Mr. Shariff has extensive family residing within the State of Minnesota. Such family includes, but is not limited to, his wife, nine-year-old daughter, three-year-old son, and his brother. Indeed, as proffered at the June 3, 2024, detention hearing, various family members were consistently present throughout Mr. Shariff's six-week trial to offer their support. Mr. Shariff has also surrendered his passport as ordered and never made any attempt to apply for a new passport.

Mr. Shariff has no criminal history. His history further includes no failure to appear for court, despite nearly two years of ongoing litigation. Community-based placements including with his wife are available, a result that will allow Mr. Shariff to provide needed support to his wife and children.

Conditions short of incarceration will satisfy the purposes of the Bail Reform Act and will reasonably assure Mr. Shariff's appearance as required and the safety of the community. In such cases, release is appropriate.

## CONCLUSION

For the foregoing reasons, we ask this Court to release Mr. Shariff, subject to reasonable conditions.  The record contains clear and convincing evidence that release is appropriate, and conditions short of incarceration will address any remaining flight and safety concerns.  In such cases, § 3143 supports his release.

Respectfully submitted,

DATED: June 10, 2024                GOETZ & ECKLAND P.A.

By: _____
                     *s/ Andrew H. Mohring*

FREDERICK J. GOETZ
Attorney Registration No. 185425
ANDREW H. MOHRING
Attorney Registration No. 190731
Banks Building
615 1st Avenue NE, Suite 425
Minneapolis, MN 55413
(612) 874-1552

ATTORNEYS FOR DEFENDANT
MUKHTAR SHARIFF