UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-124(7) (NEB/TNL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S RESPONSE TO** |
| v. | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **RELEASE PENDING** |
| MUKHTAR MOHAMED SHARIFF, | ) | **SENTENCING** |
| | ) | |
| Defendant. | ) | |
| | ) | |

The United States of America, by and through its attorneys, Andrew M. Luger,

United States Attorney for the District of Minnesota, Joseph H. Thompson, Harry M.

Jacobs, Chelsea A. Walcker, Matthew S. Ebert, and Daniel W. Bobier, Assistant U.S.

Attorneys, respectfully submits the following response to defendant's motion for

release pending sentencing. Dkt. #564.

I.   BACKGROUND

A.   **Defendant's Trial and Conviction**

Defendant Mukhtar Mohamed Shariff was convicted of participating in a

massive fraudulent scheme to obtain federal child nutrition program funds intended

to provide free meals to children in need. The defendant and his co-conspirators

obtained, misappropriated, and laundered more than $40 million in program funds

that were intended as reimbursements for the cost of serving meals to children. They

did so by exploiting changes in the program intended to ensure underserved children

received adequate nutrition during the Covid-19 pandemic. Shariff and his co-

conspirators took advantage of the Covid-19 pandemic—and the resulting program

changes—to enrich themselves by fraudulently misappropriating millions of dollars in federal child nutrition program funds.

Shariff moved to Minnesota in October 2020. Almost immediately he joined in the ongoing scheme to fraudulently obtain federal child nutrition program funds. As the jury heard at trial, Shariff planned to use the proceeds of the fraudulent scheme to build and fund the construction of a cultural center. In December 2020, he and Mahad Ibrahim created a PowerPoint outlining their business plan. The plan explicitly stated that they planned to use federal child nutrition program money to fund the Afrique cultural center.



During his trial testimony, Shariff tried to distance himself from this proposal and claimed that the discussion about the food program related to future plans following the construction and opening of the Afrique cultural center six months or a year later. That was not true. In reality, in January 2021, the Dar al Farooq site began claiming to be serving meals to 2,000 children a day. Within a month, the site claimed to be serving meals to 3,500 children a day.

Shariff signed and submitted fraudulent meal count forms claiming—falsely— that the Dar al Farooq site was serving two meals a day, seven days a week, to 3,500

children. Shariff also submitted fake rosters purporting to list the names of 3,500 children who received meals at the Dar al Farooq site. Shariff sent these fraudulent meal counts, invoices, and rosters to Feeding Our Future.

> **From:** Mukhtar Sharif <msharif34@gmail.com>
> **To:** claims@feedingourfuturemn.org
> **Bcc:** mahad.ibrahim@gmail.com
> **Subject:** claims and invoice Sept 2021
> **Date:** Thu, 21 Oct 2021 12:28:39 -0500
> **Attachments:** SKM-C45821102012000.pdf; Dar_Al_Farooq_Attendance_(September).xlsx; Waseca_Roster.xlsx; Medford_Roster.xlsx; FOF_invoice.xlsx; Dar_Al_Farooq_summer_invoice.xlsx
>
> _____
>
> Please attached.   Thank you.

In all, Shariff and his co-defendants claimed to have served nearly 2 million meals from January to November 2021 at the Dar al Farooq site for which they claimed to be entitled to nearly $5 million in federal child nutrition program funds. Shariff's actions did not go unnoticed at the Dar al Farooq mosque. In a text message exchange, his co-defendants Abdiaziz Farah and Abdimajid Nur discussed social media posts in which the "youth of Dar al Farooq" accused Shariff of being the "master mind" of a scheme to use the names of youth basketball players to defraud the federal child nutrition program.

Govt. Ex. 51f.

In addition to his fake rosters and invoices, Shariff also convinced a Bloomington Public School employee to send an inaccurate email supporting his fraud scheme. At trial, Dinna Wade-Ardley, the director of educational equity at Bloomington Public Schools, told the jury, speaking of her interactions with Shariff, that, "I feel taken advantage of, I feel the kids were taken advantage of."

Shariff testified at trial. He denied participating in any fraud scheme. He claimed that he served the number of meals claimed at the Dar al Farooq site. And he disclaimed any knowledge of the meal counts, invoices, and rosters that he submitted to Feeding Our Future. The jury did not believe him and they convicted him of conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, and money laundering.

## B.    The Attempt to Bribe a Juror

On June 2, 2024, the night before the conclusion of closing arguments and the beginning of jury deliberations, there was an attempt to bribe one of the jurors in

4

defendant's trial. A woman dropped a gift bag containing $120,000 in cash off at the home of Juror 52. One of Juror 52's relatives answered the door. The woman told him that the money was a present and that there would be more if Juror 52 voted to acquit the defendants.

After learning of the bribe attempt, Juror 52 called 911. Spring Lake Park police responded to the call. They called FBI the next morning.

On the morning of June 3, the government informed the Court of the bribe attempt. That day, the Court granted the government's motion to revoke the release of Shariff and his co-defendants. On June 10, 2024, the Court ordered that defendant Shariff was being detained under 18 U.S.C. § 3143, which governs the detention of defendants pending sentencing. Dkt. #552.

## II.   DEFENDANT'S MOTION SHOULD BE DENIED

### A.   The Legal Standard

Under 18 U.S.C. § 3143, a court "shall order" that a person who has been found guilty of an offense and who is awaiting sentencing be detained unless the court "finds by clear and convincing evidence that the person is not likely to flee to pose a danger to the safety of any other person or the community."

### B.   Defendant has not met his burden of showing clear and convincing evidence that he is not a risk of flight or danger to the community

Defendant has not met his burden to show by "clear and convincing evidence" that he is not likely to flee or pose a danger to the community.

Defendant spends the bulk of his motion denying any involvement in the attempt to bribe Juror 52. Among other things, he argues that the government

obtained and executed a search warrant on defendant Abdiaziz Farah's house but not his own house. This is not true. The government executed a search warrant on Shariff's residence in Burnsville on June 13, 2024.

Regardless, Shariff's mere denial of involvement of an attempt to bribe a juror falls far short of meeting his burden of showing clear and convincing evidence that he does not pose a risk of flight or danger to the community.

As noted above, Shariff stands convicted of participating in a massive fraud and money laundering scheme. His scheme was brazen, shameless, and lucrative. At trial, he lied to the jury about his role in, and knowledge of, the scheme. He also called other witnesses who were not credible, including an investor in Afrique who claimed that she had never received any federal child nutrition money—only to admit on cross-examination that she had received a $250,000 "loan" in January 2022 from a defendant charged in another case. Shariff also called an imam from Dar al Farooq who claimed—falsely and inconsistently with the defendant's own theory—that he saw food being distributed at Dar al Farooq on a daily basis.

In light of the nature of his fraud scheme, his own uncredible testimony, and the bribery attempt, Shariff has not shown by clear and convincing evidence that he does not pose a danger to the community.

Shariff also poses a serious risk of flight. First, he has a significant motive to flee in light of his recent conviction. Shariff was convicted for several crimes related to his involvement in a massive scheme to defraud the federal child nutrition program. Having been convicted at trial, he now awaits sentencing. He faces a

lengthy prison sentence as well as the prospect of owing millions of dollars in restitution.

In addition to a significant motive to flee, Shariff also has a place to which to flee. He was born in Somalia and lived in Kenya for several years before moving to the United States. He lived in Egypt as a young adult. And he has family in Kenya.

Indeed, at trial, Shariff cited his ties abroad and links to Somalia and east Africa as evidence that he was not involved in the charged fraud and money laundering schemes, but rather simply engaging in normal and culturally acceptable east African business practices. Shariff called an expert witness who testified at length that the defendant and others like him retained a "foot in both countries," with significant familial, cultural, and financial connections in east Africa.

For his part, as the Court heard at trial, Shariff transferred more than $1 million from the Afrique Hospitality Group bank account to his own Coinbase account. Shariff used the funds to purchase bitcoin and other cryptocurrency. Records obtained from Coinbase show that he sent much of this cryptocurrency abroad, including to Dubai and Germany.

Shariff also had discussions with his co-defendant, Abdiaziz Farah, about investing in real estate in Kenya. For example, in a text exchange in May 2021, Farah told Shariff that he would "get you and Mahad [Ibrahim] on the next one," referring to his next Kenya real estate project. Farah then explained that he had "2 lands we can develop" in Nairobi's South C neighborhood, on which he suggested they could

build "Afrique apartments" and "Empire apartments,"  referring to their respective

entities involved in the fraud scheme.

In another text exchange in December 2021, Shariff and Farah discussed

opening a Nairobi branch of Afrique Hospitality Group.



During that same exchange, Shariff explained that he had visited the South C neighborhood during a recent trip to Nairobi, and again asked when Farah was "gonna bring" him and Ibrahim "into [the] apartment deal."



In short, unlike most criminal defendants, international flight is a real possibility because he has a country to which he can flee and resume life in a place where he has lived before and in which he has family.

**III.**   **CONCLUSION**

For the reasons set forth above, the government respectfully requests that

defendant's motion for release pending sentencing be denied.

Dated: June 21, 2024

Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

BY:   _/s/ *Joseph H. Thompson*_
JOSEPH H. THOMPSON
MATTHEW S. EBERT
HARRY M. JACOBS
CHELSEA A. WALCKER
DANIEL W. BOBIER
Assistant U.S. Attorneys