UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-124(7) (NEB/DTS)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **GOVERNMENT'S POSITION** ) **REGARDING SENTENCING** |
| MUKHTAR MOHAMED SHARIFF, | ) ) ) |
| Defendant. | ) |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Joseph H. Thompson, Harry M. Jacobs, Matthew S. Ebert, and Daniel W. Bobier, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 262 months in prison.

I. **BACKGROUND**

Defendant Mukhtar Shariff participated in the largest Covid-19 fraud scheme in the United States. His crimes have shaken the Minnesota to its core—both in terms of the brazen and staggering nature of the fraud and the complete disrespect and contempt shown for the criminal justice system. His crimes have changed the state forever, and not for the better.

The Court must send a message in the strongest possible terms to Shariff and anyone else who believes they can shamelessly steal take advantage of state and federal social safety net program, steal with impunity money intended for children, and abuse the rights afforded by the criminal justice system.

### A. Shariff's Fraud Scheme

Defendant Mukhtar Mohamed Shariff was convicted of participating in a massive fraudulent scheme to obtain federal child nutrition program funds intended to provide free meals to children in need. The defendant and his co-conspirators obtained, misappropriated, and laundered more than $40 million in program funds that were intended as reimbursements for the cost of serving meals to children. They did so by exploiting changes in the program intended to ensure underserved children received adequate nutrition during the Covid-19 pandemic. Shariff and his co-conspirators took advantage of the Covid-19 pandemic—and the resulting program changes—to enrich themselves by fraudulently misappropriating millions of dollars in federal child nutrition program funds.

Shariff moved to Minnesota in October 2020. Almost immediately, he joined in the ongoing scheme to fraudulently obtain federal child nutrition program funds. As the jury heard at trial, Shariff planned to use the proceeds of the fraudulent scheme to build and fund the construction of a for-profit cultural center. In December 2020, he and Mahad Ibrahim created a PowerPoint outlining their business plan. According to their business plan, they planned to use federal child nutrition program money to fund the ongoing operations of the Afrique cultural center.



Shariff testified at trial. During his testimony, Shariff tried to distance himself from this business plan, which he claimed related to future plans to participate in the food program following the construction and opening of the Afrique cultural center six months or a year later. That was not true. In reality, in January 2021, the Dar al Farooq site began claiming to be serving meals to 2,000 children a day. Within a month, the site claimed to be serving meals to 3,500 children a day.

Shariff signed and submitted fraudulent meal count forms claiming—falsely—that the Dar al Farooq site was serving two meals a day, seven days a week, to 3,500 children. Shariff also submitted fake rosters purporting to list the names of 3,500 children who received meals at the Dar al Farooq site. Shariff submitted these fraudulent meal counts, invoices, and rosters to Feeding Our Future for reimbursement.

```
From: Mukhtar Sharif <msharif34@gmail.com>
  To: claims@feedingourfuturemn.org
 Bcc: mahad.ibrahim@gmail.com
Subject: claims and invoice Sept 2021
 Date: Thu, 21 Oct 2021 12:28:39 -0500
Attachments: SKM-C45821102012000.pdf; Dar_Al_Farooq_Attendance_(September).xlsx;
             Waseca_Roster.xlsx; Medford_Roster.xlsx; FOF_invoice.xlsx;
             Dar_Al_Farooq_summer_invoice.xlsx

Please attached.   Thank you.
```

In all, Shariff and his co-defendants claimed to have served nearly 2 million meals from January to November 2021 at the Dar al Farooq site for which they claimed to be entitled to nearly $5 million in federal child nutrition program funds.

3

Shariff's actions did not go unnoticed at the Dar al Farooq mosque. In a text message exchange, his co-defendants Abdiaziz Farah and Abdimajid Nur discussed social media posts in which the "youth of Dar al Farooq" accused Shariff of being the "master mind" of a scheme to use the names of youth basketball players to defraud the federal child nutrition program.

> **ATTENTION PARENTS!!**    1/2
>
> Minnesota Youth Connection aka MYC has committed fraud. MYC was a cover up basketball program to help the youth. Reality is that this was a hidden agenda to help collect names of the participants of this basketball program . Along with this they have collected the names of every players siblings names which had nothing to do with basketball. These names were used to con the federal government of a federal budget through a federal Covid 19 food program relief  aka UADEEG.
>
> Parents, your children have been exploited and used. These kids are all minors and these people can not ask for information without a parent present. They took advantage of the point that you guys may not be english speakers or that it's simply just a basketball program to help your kid.
>
> The master minds of these acts are Mukhtar Shariff aka Nomadic Hustle and Mohamed Omar aka Arab. Please check your names for any of your kids with the government or ask these to men personally two confirm.

In addition to his fake rosters and invoices, Shariff also convinced a Bloomington Public School employee to send an inaccurate email supporting his fraud scheme. At trial, Dinna Wade-Ardley, the director of educational equity at Bloomington Public Schools, told the jury, speaking of her interactions with Shariff, that, "I feel taken advantage of, I feel the kids were taken advantage of."

In addition to claiming to run one of the largest fraudulent food sites in Minnesota, Shariff also used Afrique Hospitality Group to launder money from a number of individuals and groups involved in the larger "Feeding Our Future" fraud scheme. He received more than $1.7 million purportedly for the sale or distribution of food on behalf of the ThinkTechAct Foundation.  He received nearly $500,000 from

Cosmopolitan Business Solutions LLC, the entity that ran Safari Restaurant. Again, these funds were purportedly for the sale or distribution of food to the Safari Restaurant group, whose owners are charged with defrauding the federal child nutrition program in *United States v. Aimee Marie Bock, et al.*, 22 CR 223 (NEB/DTS).

Through his entity Afrique Hospitality Group, Shariff received and laundered approximately $800,000 from a number of entities created and used by former Feeding Our Future employee Ikram Yusuf Mohamed and her family to defraud the federal child nutrition program. Again, these funds were purportedly for the sale or distribution of food to children at federal child nutrition program sites run by Ikram Mohamed and her family, all of whom have been charged with participating in the fraudulent scheme to obtain federal child nutrition program funds. *United States v. Ikram Yusuf Mohamed, et al.*, 24 CR 15 (NEB/DTS).

| SOURCES OF FUNDS | Total Deposits |
|---|---|
| ThinkTechAct Foundation | $ 1,783,583.90 |
| Other Food Program Income | $ 1,335,087.37 |
|    Cosmopolitan Business Solutions LLC | 482,024.70 |
|    Star Distribution LLC | 448,040.15 |
|    Inspiring Youth & Out Reach LLC | 169,390.95 |
|    Active Mind's Youth LLC | 139,042.26 |
|    United Youth of Mpls LLC | 96,589.31 |
| Feeding Our Future | $ 1,150,523.55 |
| Investment Income | $ 886,000.00 |
| Empire Cuisine and Market LLC / Empire Enterprises LLC | $ 834,546.00 |
| Related Parties | $ 260,820.00 |
|    Saint Cloud Somali Athletic Club | 260,820.00 |

B.  **Shariff's Trial**

Shariff has never accepted any responsibility or shown any remorse for his crime. To the contrary, not only did Shariff testify falsely at trial, but he also showed complete contempt for the Court and the criminal justice system.

5

Shariff testified falsely at trial. He denied participating in any fraud scheme. He claimed that he wanted to give back to the community and help kids. He claimed that he served the number of meals claimed at the Dar al Farooq site. Despite being the CEO of Afrique, he disclaimed any knowledge of the meal counts, invoices, and rosters that he submitted to Feeding Our Future. Instead, he attempted to point the finger at his absent co-defendant, Mahad Ibrahim, who was not present at trial. The jury flat out rejected his testimony.

Shariff also presented false testimony from at least one other witness. Shariff called one of the imams at the Dar al Farooq mosque, who was a personal friend, to testify in his defense. Although Shariff's defense was that he served meals one or two times a week at the Dar al Farooq mosque, the imam testified—falsely—that he saw Shariff and his team serving meals at the Dar al Farooq mosque seven days a week.

Shariff also showed contempt for the court process in other ways, including by making illicit audio recordings of trial testimony in flagrant violation of the rules governing federal trials. Like all federal courts, the District of Minnesota prohibits the recording of courtroom testimony or proceedings. This rule is hardly a secret. It applies in every federal court in the United States. The policy was posted outside the courtroom for all to see.



The policy is significant and exists for a reason: to protect the sanctity of the proceedings and all those taking part in them. Indeed, while the reporters who covered the trial in the courtroom and around the courthouse throughout the trial regularly attempted to photograph or video the defendants and parties as they entered the courthouse, they were never allowed to take a photograph or record the trial proceedings.

Despite this basic foundational rule prohibiting the recording of courtroom testimony and proceedings, defendant Shariff made audio recordings of witness testimony during the trial. When agents searched Shariff's phone after his co-defendants attempted to bribe a juror, they recovered 14 audio recordings of witness testimony taken during the trial. The agents recovered more than 11 hours of recorded trial testimony from Shariff's phone, which included testimony from seven days of trial. The recordings were saved in the Apple notes feature on Shariff's phone

7

and FBI cyber analysis response team agents concluded that the recordings were made on Shariff's phone.

Finally, as the Court is aware, some of the defendants in Shariff's trial attempted to bribe one of the jurors in exchange for her return of a not guilty verdict. They targeted Juror 52 because she was the youngest juror and they believed her to be the only juror of color. After researching the Juror 52's address and other personal information online and via social media, they conducted surveillance of Juror 52 to confirm her home address and obtain information about her daily habits. This included following Juror 52 home as she left court during the trial.

The participants in the bribe attempt used an encrypted messaging application called Signal to communicate about the plan to bribe Juror 52. Signal is an encrypted text messaging app that provides end-to-end encryption to ensure messages cannot be intercepted or obtained by law enforcement agents pursuant to a search warrant or other court order.

On June 2, 2024—the night before closing arguments were scheduled to conclude and jury deliberations were to begin—Ladan Ali and Abdulkarim Farah delivered $120,000 cash bribe to Juror 52's house. Ladan Ali explained that the money was a present in exchange for a not guilty verdict, and that there would be more money if Juror 52 returned a not guilty verdict. Fortunately, Juror 52 did not accept the bribe. She called the police

On the morning of June 3, 2024, the defendants learned that Juror 52 had called 911 to report the bribe. The Court ordered the defendants to put their phones

8

in airplane mode and surrender them to the FBI. The government obtained a warrant to search the contents of Shariff's phone. When they did, they found that Shariff deleted the signal messaging application from his phone at approximately 8:43 a.m. on June 3, 2024—right after learning that Juror 52 had reported the bribe attempt to law enforcement.



## II.  THE GUIDELINES RANGE

### A.  The Base Offense Level and Loss Amount

The base offense level is 7 pursuant to Guidelines § 2B1.1(a)(1). PSR ¶103. The base offense level is increased 22 levels pursuant to Guidelines § 2B1.1(1)(L) because the loss was more than $25 million but less than $65 million. PSR ¶104. The offense level is increased an additional 2 levels pursuant to Guidelines § 2B1.1(b)(9)(A) because the offense involved a misrepresentation that Shariff was acting on behalf of a charitable or educational organization. PSR ¶105. The offense level is increased 2 levels pursuant to Guidelines § 2B1.1(b)(10)(C) because the offense involved sophisticated means. PSR ¶106.

9

The offense level is increased 2 levels pursuant to Guidelines § 2B1.1(b)(12) because the offense involved conduct described in 18 U.S.C. § 1040 (Fraud in Connection with a Major Disaster or Emergency Benefits). PSR ¶107. The offense level is increased by 2 levels pursuant to Guidelines § 2S1.1(b)(2)(B) because the defendant was convicted under 18 U.S.C. § 1956. PSR ¶113.

### B. Obstruction of Justice

Although Shariff testified at trial and the jury rejected his testimony, the PSR did not apply a 2-level enhancement for obstruction of justice. PSR ¶¶110, 116. The government's understanding is that the probation office's policy is not to weigh in on the applicability of an obstruction of justice enhancement based on a defendant's own false testimony at trial because the Court is better situated to evaluate the application of that enhancement. Accordingly, the PSR did not discuss the applicability of an obstruction enhancement.

The government believes the Court should apply a 2-level enhancement for obstruction of justice based both on Shariff's false trial testimony as well as his destruction of evidence by deleting the encrypted messaging application used to discuss the attempt to bribe Juror 52.[1]

Shariff provided materially false testimony at trial. Guidelines § 3C1.1 states that an obstruction of justice enhancement applies when "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of

---

[1] Rule 32 of the Federal Rules of Criminal Procedure allow a party, with good cause, to raise a new objection to the PSR "at any time before sentence is imposed." Fed. R. Crim. P. 32(i)(1)(D).

justice during the course of the investigation, prosecution, or sentencing." Application Note 4 lists the types of conduct to which this application applies, including "committing, suborning, or attempting to suborn perjury." Guidelines § 3C1.1, application note 4(b). A witness violates the federal perjury statute, 18 U.S.C. § 1621, when he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).

Shariff committed perjury during his trial testimony. He lied across a range of subjects. He did so repeatedly. He did so deliberately. And he did so not out of confusion or mistake, but rather because he believed he could trick the jury and avoid being convicted for his scheme.

Second, as noted above, Shariff deleted the Signal messaging application from his phone on the morning of June 3, 2024, when the Court ordered him and his co-defendants to turn over their phones to the FBI. This was the same messaging application that co-defendants used to formulate, execute, and discuss the plan to bribe Juror 52. Shariff's destruction of evidence of the bribe attempt clearly qualifies as obstruction of justice. Guidelines § 3C1.1, application note 4(D) ("destroying or concealing . . . evidence that is material to an official investigation or judicial proceeding" is an example of conduct covered by the obstruction of justice enhancement).

### C. Criminal History

Shariff falls in criminal history category I. PSR ¶125.

D.  **Advisory Guidelines Range**

An offense level of 37 and criminal history level I results in an advisory Guidelines range of 210 to 262 months in prison.

### III.   GOVERNMENT'S SENTENCING RECOMMENDATION

Based on a review of the § 3553(a) factors, the government recommends that the Court impose a sentence of 262 months in prison.

A.  **Nature and Circumstances of the Offense**

Shariff participated is one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. He took advantage of a once-in-a-century global pandemic to enrich himself. He abused the generosity of Minnesota's generous social safety net—a system designed to ensure that no child goes without food.

The cynicism of his crime is staggering. Shariff and his co-defendants carried out their scheme using fictitious non-profit educational companies. He acted under the guise of a mosque and a public school district. And he used the names of fake children and misappropriated the names of children who signed up for a youth basketball league.

 To this day, Shariff has taken no responsibility for his crime. During his time on the stand, he repeatedly denied involvement in the fraud scheme and claimed that he wanted to help feed kids. That was not true. He only wanted to help himself.

B.  **History and Characteristics of the Defendant**

Nothing in Shariff's background explains or excuses his crime. Shariff came to the United States at the age of 5.  PSR ¶137. He and his family arrived as refugees.

12

PSR ¶¶136-37. He played high school basketball. PSR ¶140. Shariff had an opportunity to attend college, though he did not graduate. PSR ¶¶140-41, 156-57. His brother attended medical school. PSR ¶141. Shariff later studied the Islamic religion and Arabic language in Cairo, Egypt. PSR ¶¶141, 158. After finishing his studies, Shariff worked as a consultant for Microsoft. Shariff reported that the work was "lucrative." PSR ¶144.

Nevertheless, in late 2020, Shariff moved to Minnesota and immediately began defrauding the federal child nutrition program operated by the Minnesota Department of Education. As explained above, by early January, Shariff registered Afrique Hospitality Group with the Minnesota Secretary of State. And he immediately claimed to be serving two meals a day to first 2,000 children a day and then 3,500 children a day, seven days a week, at the Dar al Farooq site.

Shariff claimed that he wanted to use Afrique to start a community center, complete with office space, restaurants and a coffee shop, a daycare, and a library. Maybe so. But that's not what he did. Instead, he used Afrique to fraudulently obtain and launder millions of dollars in federal child nutrition program funds. Rather than start a small business, he committed a massive fraud.

    C.    **The Need for Deterrence**

Shariff participated is one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. But Shariff didn't just take advantage of the Covid-19 pandemic to enrich himself and his co-conspirators. He took advantage of our state's compassion, and its efforts to ensure no child went hungry.

Make no mistake, Shariff's fraud has done great damage to the state. It has eroded trust in the government and raised questions about the sustainability of the state's system of social services. His crime undermined and endangered legitimate nonprofit organizations that rely on donations to carry out necessary and important charitable work.[2]

What is worse, through his actions, Shariff has cast doubt on the integrity of the criminal justice system and trial by jury.[3] Shariff has demonstrated his complete and total contempt for the Court, the trial, and the criminal justice system. His actions have changed the way this Court and the District of Minnesota will handle criminal trials going forward.

Despite this, to this day, Shariff has denied any and all responsibility for his crime. He has not expressed an ounce of remorse for his actions. He appears to have felt no shame.

Cases like this are difficult to investigate and prosecute, which results in the widely held belief that perpetrators routinely get away with these crimes. The Court must send a message that circling the wagons, lying, and attempting to hide this kind of criminal activity will not be tolerated. And the sentence must send a message of

---

[2] *See, e.g.*, Kelly Smith, *Feeding Our Future fraud investigation casts scrutiny on Minnesota nonprofits*, Minneapolis Star Tribune (Dec. 22, 2022), available at https://www.startribune.com/feeding-our-future-fraud-investigation-casts-scrutiny-on-minnesota-nonprofits/600238797.

[3] *See, e.g.*, Editorial Board, *A shocking 'mob movie' bribe attempt: Alleged attempt to sway juror in Feeding Our Future trial is a further assault on public trust*, Minneapolis Star Tribune (June 4, 2024), available at https://www.startribune.com/a-shocking-mob-movie-bribe-attempt/600371055.

deterrence to all those who feel they can corrupt the criminal justice process by lying, breaking the rules, and obstructing justice.

Taking into consideration the Sentencing Guidelines, as well as all of the other factors required to be considered under § 3553(a), the government respectfully suggests that a sentence of 262 months in prison appropriately reflects the seriousness of Shariff's crimes, promotes respect for the law, provides a just punishment, and creates adequate deterrence not only to Shariff, but to all other individuals who take advantage of the state and believe that they are above the law.

## IV.  CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 262 months in prison.

Dated: September 30, 2024

Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

BY:   /s/ *Joseph H. Thompson*
JOSEPH H. THOMPSON
HARRY M. JACOBS
MATTHEW S. EBERT
DANIEL W. BOBIER
Assistant U.S. Attorneys