UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-124(2) (NEB/DTS)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) **GOVERNMENT'S POSITION** |
| v. | ) **REGARDING SENTENCING** |
| | ) |
| MOHAMED JAMA ISMAIL, | ) |
| | ) |
| Defendant. | ) |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Joseph H. Thompson, Harry M. Jacobs, Matthew S. Ebert, and Daniel W. Bobier, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 151 months in prison.

**I.   BACKGROUND**

  **A.   Ismail's Fraud Scheme**

Defendant Mohamed Ismail was convicted of participating in a massive fraudulent scheme to obtain federal child nutrition program funds intended to provide free meals to children in need. The defendant and his co-conspirators obtained, misappropriated, and laundered more than $40 million in program funds that were intended as reimbursements for the cost of serving meals to children. They did so by exploiting changes in the program intended to ensure underserved children received adequate nutrition during the Covid-19 pandemic. Ismail and his co-conspirators took advantage of the Covid-19 pandemic—and the resulting program

changes—to enrich themselves by fraudulently misappropriating millions of dollars in federal child nutrition program funds.

Ismail was a partner and co-owner of Empire Cuisine & Market, one of the entities that originated the fraud scheme. As the Court will recall, it was Empire Cuisine that enrolled in the federal child nutrition program in April 2020—during the early days of the Covid-19 pandemic and within weeks of their registration of the company with the Minnesota Secretary of State. Ismail and Farah immediately opened a number of federal child nutrition program sites and began claiming—falsely—to be serving meals to thousands of children per day. These claims were fraudulent. As the Court heard at trial, no meals at all were served at many of the Empire Cuisine "sites." Indeed, at some of the sites, it was instead the Shakopee Public Schools who were actually serving meals to kids on a daily basis.

Ismail's company was one of the for-profit restaurants that Minnesota Department of Education employees flagged as submitting an alarming number of fraudulent claims in the summer and fall of 2020. This led MDE to change the rules to prohibit for-profit restaurants from operating federal child nutrition program sites. But Ismail and his co-owner Abdiaziz Farah were not deterred. Rather than stop submitting fraudulent meal claims, they began opening their sites in the name of various non-profit entities, and then passing the fraudulently obtained federal child nutrition program funds through to Empire Cuisine.

Ismail was a full partner in Empire Cuisine and in the fraud scheme. During a search of his home in January 2022, agents found an array of documents related to

all aspects of the fraud scheme, including fake meal count sheets. *See, e.g.*, Gov't Ex. H-70q.

 

Agents recovered notes regarding the fake counts submitted for meals purportedly distributed at various sites around Minnesota. *See, e.g.*, Gov't Ex. H-70t.

Agents also recovered fake invoices, including an invoice claiming that Empire Cuisine was entitled to more than $1.5 million in federal child nutrition program funds for meals purportedly distributed in the month of March 2021. *See, e.g.*, Gov't Ex. H-70, H-70v.

| Empire Cuisine & Market | | | | |
|---|---|---|---|---|
| 232 Marschall Road | | | | |
| Shakopee, MN 55379 | | | | |
| 612-644-6843 | | | | |
| Submitted on 03/31/2021 | | | | |

| Invoice for | Payable to | Invoice # | | |
|---|---|---|---|---|
| Kara Lomen | Empire Cuisines & Markets | 7823 | | |
| Partners in Quality Care | | | | |
| 1035 7th Street W | Project | Due date | | |
| Saint Paul, MN 55102 | SFSP SITES | 4/15/2021 | | |

| Description | Qty | Unit price | Total price |
|---|---|---|---|
| Greenwood | 9200 | $5.98 | $55,016.00 |
| Four Seasons | 10850 | $5.98 | $64,883.00 |
| Autumn Holdings | 12400 | $5.98 | $74,152.00 |
| Winfield Townhomes | 31000 | $5.98 | $185,380.00 |
| Al Sunnah | 62000 | $5.98 | $370,760.00 |
| Heritage Hills | 7750 | $5.98 | $46,345.00 |
| Highland Apartments | 7750 | $5.98 | $46,345.00 |
| Crossings at V | 7750 | $5.98 | $46,345.00 |
| Valleyview Park | 9600 | $5.98 | $57,408.00 |
| Clifton | 15500 | $5.98 | $92,690.00 |
| Samaha | 62000 | $5.98 | $370,760.00 |
| Albright Townhomes | 17050 | $5.98 | $101,959.00 |
| Lifestyle Apartments | 12400 | $5.98 | $74,152.00 |
| Notes: | | Subtotal | $1,586,195.00 |
| | | Adjustments | $0.00 |
| | | | $1,586,195.00 |

### B. Ismail's Fraud Proceeds

Ismail personally took home more than $2 million from the fraud scheme in a 12-month period. He spent his money freely.

Over a 14-month period from November 30, 2020 through January 20, 2022, Ismail withdrew $170,000 in cash from ATMs. He purchased more than $11,000 worth of firearms and firearms accessories, including a Daniel Defense DDM4 V7 AR-15 style rifle, a Black Rain AR-15-style rifle, a Heckler & Koch VP9-B 9mm handgun, and multiple optical sights and scopes.

In May 2021, he used more than $130,000 in fraud proceeds to pay off his home mortgage.

4

Ismail sent much of this money abroad, where it remains to this today. He sent more than $400,000 in fraud proceeds to China.

| Date | Recipient | Amount |
|---|---|---|
| March 4, 2021 | Jiangxi Enda Linen Co., Ltd. (China) | $199,785 |
| June 3, 2021 | Amaana Money Transfer Co. (Int'l Wire Transfer) | $52,000 |
| June 29, 2021 | Jiangxi Enda Linen Co., Ltd. (China) | $100,000 |
| July 2, 2021 | Continental Logistics Co., Ltd. (China) | $13,900 |
| August 12, 2021 | Guangzhou Logistics Co., Ltd. (China) | $18,923 |
| October 7, 2021 | Shangro City Xiange Enter M Ser C (China) | $100,000 |
| **Total** | | **$484,608** |

These were federal child nutrition program funds received by Empire Cuisine & Market. On February 22, 2021, for example, Ismail deposited a $200,000 check from Empire into his personal bank account. At the time, he only had $6,000 in his account. Two weeks later, he wired almost all of this money, $199,785, to a Chinese entity called Jiangxi Enda Linen Co., Ltd.

Notably, despite being the proceeds of his fraud scheme, the money Ismail sent to China has not been seized or forfeited because it is located abroad and outside the reach of American law enforcement. In other words, Ismail will leave prison a wealthy man.

Ismail also owns real estate in both Kenya and Somalia. He owns real estate in the South B neighborhood in Nairobi, Kenya. PSR ¶154. The property is worth

approximately $200,000. *Id.* Ismail also owns a second apartment that is currently under construction in Nairobi. *Id.* That property is worth approximately $170,000. *Id.*

Ismail also owns a home in Borama, Somalia, a city of 300,000 near the Ethiopian border. PSR ¶154.

Like the funds he sent to China, these properties are not subject to seizure because they are located outside of the United States.

He will leave prison a wealthy man.

    **C.**    **Ismail's Passport Fraud and Attempted Flight to Kenya**

On January 20, 2022, the government executed search warrants at two dozen locations around Minnesota in the investigation in the scheme to defraud the federal child nutrition program. The search locations included the residences of both Mohamed Ismail and his business partner and future co-defendant Abdiaziz Farah. During the searches, the government seized their passports. A couple of months later, on March 22, 2022, both Ismail and Farah went to the Minnesota Passport Office to apply for new passports. Both Ismail and Farah lied on their passport applications, falsely claiming they had lost their old passports.

On January 20, 2022, federal agents seized Ismail's U.S. passport during the execution of a federal search warrant at his house. The passport was found in a locked safe along with a passport belonging to Ismail's wife. Ismail provided agents the combination to unlock the safe.

In the wake of the search, Ismail and Farah retained attorneys and were informed they were targets of the Feeding Our Future investigation.

Two months later, on March 22, 2022, Ismail and Farah went to the Minneapolis Passport Agency in downtown Minneapolis to apply for new U.S. passports. Each of them lied on their passport applications.

Ismail and Farah each claimed falsely that their passports had been lost. They signed their applications after attesting that they had "not knowingly and willfully made false statements or included false documents in support of this application."

Ismail also submitted a required Statement Regarding a Lost or Stolen U.S. Passport Book and/or Card (also known as a Form DS-64). On the Form DS-64, Ismail falsely represented that he had "lost" his passport "at home." He also falsely claimed that he had filed a police report in connection with his "lost" passport. A search of police records showed that this was not true.

The Form DS-64 expressly warned that "false statements made knowingly and willfully on this form, in U.S. passport applications, or in affidavits or other supporting documents submitted therewith are punishable by fine or imprisonment under U.S. law, including 18 U.S.C. 1001 and/or 18 U.S.C. 1542."

7

**WARNING**
False statements made knowingly and willfully on this form, in U.S. passport applications, or in affidavits or other supporting documents submitted therewith are punishable by fine and/or imprisonment under U.S. law, including the provisions of 18 U.S.C. 1001 and/or 18 U.S.C. 1542. Alteration or mutilation of a U.S. passport is punishable by fine and/or imprisonment under the provisions of 18 U.S.C. 1543. The use of a U.S. passport in violation of the restrictions contained therein or of the passport regulations is punishable by fine and/or imprisonment under 18 U.S.C. 1544. All statements and documents submitted are subject to verification.

Based on these false representations, the U.S. Department of State issued Ismail and Farah new U.S. passports the same day they applied.

Perhaps unsurprisingly, less than two weeks after fraudulently obtaining a new passport, Ismail attempted to use it to leave the country and go to Kenya. On April 4, 2022, Ismail booked a flight departing from Rochester, Minnesota on April 20, 2022, with the ultimate destination of Nairobi, Kenya. Ismail used his new passport to check in for his flight at the Rochester International Airport on April 20. Ismail arrived at MSP airport that afternoon and presented his ticket to board his flight bound for Nairobi. FBI agents arrested him on the jetway.

At the time of his arrest, Ismail was carrying two carry-on bags. He had five full-sized suitcases of checked luggage.

In short, there is every indication that Ismail intended to flee beyond the reach of law enforcement to live out his days on the millions he stole from the American taxpayers.

## II.   THE GUIDELINES RANGE

### A.   The Base Offense Level and Loss Amount

The base offense level is 6 pursuant to Guidelines § 2B1.1(a)(1). PSR ¶ 102. The base offense level is increased 22 levels pursuant to Guidelines § 2B1.1(1)(L) because the loss was more than $25 million but less than $65 million. PSR ¶ 103. The offense

level is increased 2 levels pursuant to Guidelines § 2B1.1(b)(12) because the offense involved conduct described in 18 U.S.C. § 1040 (Fraud in Connection with a Major Disaster or Emergency Benefits). PSR ¶104. The offense level is increased by 2 levels pursuant to Guidelines § 2S1.1(b)(2)(B) because the defendant was convicted under 18 U.S.C. § 1956. PSR ¶110. Another 2-level enhancement applies pursuant to Guidelines § 3C1.1 because the defendant obstructed justice by committing passport fraud and attempting to flee the country and escape prosecution in April 2022. PSR ¶113.

Although the defendant was previously convicted of passport fraud in December 2022, he qualifies as a zero-point offender because his prior conviction is considered relevant conduct to the instant offense. PSR ¶¶116, 122. As such, he receives a 2-level reduction pursuant to Guidelines 4C1.1(a) and (b). PSR ¶116.

Based on the above, the total offense level is 32. PSR ¶118.

### B.   Criminal History

Ismail was convicted of passport fraud in November 2022 and sentenced to 7 months in prison. PSR ¶122. Because that crime qualifies as relevant conduct and led to the application of an obstruction enhancement in this case, Ismail does not receive any criminal history points for that conviction.[1] Accordingly, he falls into criminal history category I. PSR ¶125.

---

[1]   Ismail has objected to the application of the obstruction enhancement on the grounds that his passport fraud case had nothing to do with his fraud case. As the PSR pointed out, if that were the case, Ismail would fall in criminal history level II and would not qualify for the zero-point offender reduction under Guidelines § 4C1.1. PSR Addendum at 3-4.

### C. Advisory Guidelines Range

An offense level of 32 and criminal history level I results in an advisory Guidelines range of 121 to 151 months in prison.

## III. GOVERNMENT'S SENTENCING RECOMMENDATION

Based on a review of the § 3553(a) factors, the government recommends that the Court impose a sentence of 151 months in prison.

### A. Nature and Circumstances of the Offense

Ismail participated in one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. He took advantage of a once-in-a-century global pandemic to enrich himself. He abused the generosity of Minnesota's social safety net—a system designed to ensure that no child goes without food.

Notably, Ismail's company was one of the first to get involved in the massive scheme to fraudulently obtain federal child nutrition program funds. His was one of the companies that forced MDE to change the rules to prohibit for-profit restaurants for operating federal child nutrition program sites. But, of course, he and his co-conspirators were not deterred. They simply carried on by opening sites through a variety of non-profits and then passing the fraudulently obtain funds to their company, Empire Cuisine.

As noted above, Ismail profited handsomely from his role in the scheme—taking home more than $2 million in federal child nutrition program funds in 2021 alone. Ismail sent much of this money abroad—he transferred nearly $500,000 to China and owns real estate in both Kenya and Somalia. To be clear, this money is

10

beyond the reach of American law enforcement. Neither these funds nor his international real estate holdings have been, or will be, seized or forfeited. Ismail will leave prison a rich man.

Despite the egregious of his fraud scheme, Ismail has never taken any responsibility or expressed any remorse for his crime. Like his co-defendants, he has no contrition for defrauding the very country that took him in.

### B. History and Characteristics of the Defendant

Ismail was born in Somalia. PSR ¶130. His family fled to Kenya in 1991, where he spent time in a refugee camp. PSR ¶130. He later attended boarding school in Kenya. PSR ¶130.

Ismail immigrated to the United States in 1999. PSR ¶131. He became a naturalized U.S. citizen in 2005. PSR ¶238. Ismail sponsored his mother and father's immigration to the United States. PSR ¶135.

Ismail found employment in Minnesota, and later started a small business in Shakopee. PSR ¶150. By all measures, Mohamed Ismail was living the American dream. But it wasn't enough. In 2018, Ismail sent his wife and five children to live in Kenya in 2018. PSR ¶131. And then he began egregiously defrauding the state and country that took him in and afforded him so many opportunities.

### C. The Need for Deterrence

Ismail participated is one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. But Ismail didn't just take advantage of the Covid-19 pandemic to enrich himself and

his co-conspirators. He took advantage of our state's compassion, and its efforts to ensure no child went hungry.

Make no mistake, Ismail's fraud has done great damage to the state. It has eroded trust in the government and raised questions about the sustainability of the state's system of social services. His crime undermined and endangered legitimate nonprofit organizations that rely on donations to carry out necessary and important charitable work.

Despite this, to this day, Ismail has denied any and all responsibility for his crime. He has not expressed an ounce of remorse for his actions. He appears to have felt no shame.

Importantly in this particular case, the Court must send the message that fraud schemes like this are not worth it. That is particularly true here where Ismail still has a significant amount of fraud proceeds. Make no mistake. Ismail will leave prison a wealthy man, with real estate holdings in both Kenya and Somalia. And for that reason alone, the Court needs to impose a significant sentence. The Court must levy a sentence sufficiently severe that few would deem it worth it, even where $2 million in ill-gotten gains await them upon completion of their sentence.

Taking into consideration the Sentencing Guidelines, as well as all of the other factors required to be considered under § 3553(a), the government respectfully suggests that a sentence of 151 months in prison appropriately reflects the seriousness of Shariff's crimes, promotes respect for the law, provides a just

punishment, and creates adequate deterrence not only to Ismail, but to all other individuals who take advantage of the state and believe that they are above the law.

## IV.  CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 151 months in prison.

Respectfully Submitted,

Dated:  October 2, 2024

ANDREW M. LUGER
United States Attorney

BY:  /s/ *Joseph H. Thompson*
JOSEPH H. THOMPSON
HARRY M. JACOBS
MATTHEW S. EBERT
DANIEL W. BOBIER
Assistant U.S. Attorneys