UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-124(3) (NEB/DTS)

UNITED STATES OF AMERICA,

                Plaintiff,

v.

MAHAD IBRAHIM,

                Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and the defendant Mahad Ibrahim agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.   **Charges**. The defendant agrees to plead guilty to Count 5 of the Superseding Indictment, which charges the defendant with wire fraud, in violation of Title 18, United States Code, Section 1343, and Count 36 which charges the defendant with money laundering, in violation of Title 18, United States Code, Section 1957. The defendant fully understands the nature and elements of the crimes with which he has been charged. At the time of sentencing, the United States agrees to move to dismiss the remaining charges against him in the Superseding Indictment.

2.   **Factual Basis**. The defendant is pleading guilty because he is, in fact, guilty of Count 5 and Count 36 of the Superseding Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a

1

reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

From approximately September 2016 to June 2021, the defendant served as the president and founder of ThinkTechAct Foundation ("ThinkTechAct"), a Minnesota nonprofit educational organization that also operated under the name Mind Foundry Learning Foundation ("Mind Foundry"). During this period, the defendant's organizations participated in the federal child nutrition program activities under the oversight of authorized program sponsors – Partners in Nutrition and Feeding Our Future. More specifically, the defendant's nonprofit worked with vendor organizations such as Abdiaziz Farah's "Empire" group, which purported to service more than two dozen Federal Child Nutrition Program sites throughout the State of Minnesota during 2020 and 2021, including in Minneapolis, St. Paul, Bloomington, Burnsville, Faribault, Owatonna, Shakopee, Circle Pines, and Willmar.

The defendant was generally aware of the high likelihood that vendor organizations then used ThinkTechAct to fraudulently bill program sponsors for food that was not provided to children that did not exist, using signed meal count sheets that inflated the number of meals actually served and rosters that contained false names of children and families they claimed they had fed. Unlike other defendants, the defendant purchased more than a $1.5 million dollars in food for the distribution to children as part of the program, and provided online and in-person education to children and their parents throughout 2020-2021. While he did not participate directly in his co-conspirators' signing of fraudulent meal count sheets or fabrication

of rosters, the defendant was nonetheless aware of the high likelihood that his co-conspirators were abusing the lack of oversight from sponsors to profit from the federal food program. Defendant took deliberate steps to avoid learning about the full scale of his co-conspirators' fraudulent activities at sites the Sponsor organizations believed were operated by his nonprofit. Nonetheless, the defendant knowingly participated in the scheme by continuing to allow his nonprofit, ThinkTechAct, to be used to bill the food program, from which he directly profited.

Defendant deliberately closed his eyes to what should have been obvious to him about the nature and scale of the scheme to defraud the federal food program. The Defendant benefitted from the scheme and knowingly took advantage of it by personally receiving substantial compensation from vendor organizations who used his nonprofit to defraud the federal food program. The defendant became aware of improprieties in connection with the federal child nutrition programs but chose not to investigate to confirm a high probability of fraud and took no corrective action.

## Count 5

On or about August 2, 2021, the defendant received an email from Abdiaziz Farah that traveled in interstate commerce with the subject line "Empire Summer Food Claim." The email contained an invoice from Abdiaziz Farah to Partners in Nutrition, a sponsoring organization. Attached to the email was an invoice from Empire Cuisine and Market claiming it was entitled to $988,212 in federal child nutrition program funds. Attached to the email were numerous delivery receipts and weekly consolidated meal counts claiming many of these sites had consistently fed

3

thousands of children every week for most of the summer of 2021.

The Defendant knew that Partners in Nutrition would use this communication to support claims for federal food program reimbursement and was further aware ~~of~~ the high probability that his co-conspirators had inflated and otherwise falsified information to make it appear to the sponsor that the claimed services had been provided at sites that the sponsor believed were operated by the defendant's nonprofit.

The defendant ultimately profited from the money that his co-conspirator, Abdiaziz Farah, received as the result of this fraudulent invoice being sent and took deliberate steps to remain ignorant as to how much food the Empire Group had actually provided, and how many children the Empire group had truly fed, even though he knew the sponsor would use this communication to support claims for federal program reimbursement.

### Count 36

On or about August 20, 2021, Defendant made a $200,000 payment from MIB Holdings LLC toward his residential property in Lewis Center, Ohio, using funds derived from fraudulent activity related to federal child nutrition programs. The defendant used money furnished to him by his co-conspirator, Abdiaziz Farah, to make a house payment, and——as the defendant knew through his deliberate and willful ignorance—such payment constituted a monetary transaction in criminally derived property of a value greater than $10,000.

4

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5

5.    **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and/or denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6.    **Statutory Penalties**. The defendant understands that Count 5 of the Superseding Indictment, charging wire fraud in violation of 18 U.S.C. § 1343, is a felony offense that carries the following statutory penalties:

    a.    a maximum term of imprisonment of 20 years in prison;

    b.    a supervised release term of up to three years;

    c.    a fine of up to $250,000, or twice the gross gain or loss from the offense, whichever is greater;

    d.    assessment to the defendant of the costs of prosecution as authorized by 28 U.S.C. §§ 1918(b) and 1920; and

    e.    a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

The defendant understands that Count 36 of the Superseding Indictment, charging money laundering in violation of 18 U.S.C. § 1957, is a felony offense that carries the following statutory penalties:

    a.    a maximum of 10 years in prison;

b.    a supervised release term up to a maximum
supervised release term of 3 years;

c.    a maximum fine of $250,000, or twice amount of the criminally
derived property, whichever is greatest;

d.    restitution to victims as agreed to by the parties in this
agreement;

e.    a mandatory special assessment of $100 under 18 U.S.C.
§ 3013(a)(2)(A);

7.    **Revocation of Supervised Release.** The defendant understands that
if he were to violate any supervised release condition while on supervised release, the
Court could revoke his supervised release, and the defendant could be sentenced to
an additional term of imprisonment up to the statutory maximum set forth in 18
U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands
that as part of any revocation, the Court may include a requirement that he be placed
on an additional term of supervised release after imprisonment, as set forth in 18
U.S.C. § 3583(h).

8.    **Guidelines Calculations**. The parties acknowledge that the defendant
will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea
agreement should be construed to limit the parties from presenting any and all
relevant evidence to the Court at sentencing. The parties also acknowledge that the
Court will consider the United States Sentencing Guidelines in determining the
appropriate sentence and stipulate to the following guideline calculations:

a.    Base Offense Level. The parties agree that for Count 5 the base
offense level is 7. U.S.S.G. § 2B1.1(a)(1).

The parties agree that for Count 36 the base offense level is the
offense level for the underlying offense from which the laundered

funds were derived, pursuant to U.S.S.G. § 2S1.1(a)(1). Therefore, the base offense level for Count 36 is 7 as calculated under Count 7.

b.    Specific Offense Characteristics. The government reserves the right to argue that for Count 7 a **20-level** enhancement applies pursuant to Guidelines § 2B1.1(b)(1)(K) because the loss was more than $9.5 million but not more than $25 million.    The defendant reserves the right to argue that for Count 7 an **18-level** enhancement applies pursuant to Guidelines § 2B1.1(b)(1)(J) because the loss was more than $3.5 million but not more than $9.5 million.

The parties agree that pursuant to Guidelines § 2B1.1(b)(9)(A) the offense level should be increased by **2 levels** because the offense involved a misrepresentation that the defendant was acting on behalf of a charitable and/or educational organization. The government reserves the right to argue that pursuant to Guidelines § 2B1.1(b)(10) the offense level should be increased by **2 levels** because the conduct involved sophisticated means, and the defendant reserve the right to argue that this enhancement does not apply.  The parties agree that pursuant to Guidelines § 2B1.1(b)(12) the offense level should be increased by **2 levels** because the offense involved conduct described in 18 U.S.C. § 1040 (Fraud in Connection with a Major Disaster or Emergency Benefits).    The parties agree that no other specific offense adjustments apply.

The parties agree that for Count 36 a **one-level** enhancement applies pursuant to U.S.S.G. § 2S1.1(b)(2)(A) because defendant was convicted under 18 U.S.C. § 1957.

c.    Chapter 3 Adjustments. The parties agree that Count 5 and Count 36 of the Superseding Indictment are grouped together into a single group because both counts embody conduct that is treated as a specific offense characteristic in the guideline applicable to the other count. U.S.S.G. § 3D1.2(c). Therefore, the offense level applicable to the group will be the highest offense level of the counts in the group, which, depending upon the loss calculation under Guidelines § 2B1.1(b)(1) and the sophisticated means enhancement, would be either 29 (as the government believes) or 25 (as the defendant believes). The parties agree that no Chapter 3 adjustments apply, and particularly that §3B1.1 (aggravating role) does not apply.

8

d.    <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

e.    <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.    <u>Zero-Point Offender Adjustment</u>. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level adjustment under U.S.S.G. § 4C1.1.

9

g.    <u>Guidelines Range</u>. If, as the government believes, the adjusted offense level is **29** and the criminal history category is I, the Sentencing Guidelines range is **87 - 108** months of imprisonment. If, as the defendant believes, the adjusted offense level is **25** and the criminal history category is I, the Sentencing Guidelines range is **57 - 71** months of imprisonment.

h.    <u>Fine Range</u>. If, as the government believes, the adjusted offense level is **29**, the Sentencing Guidelines fine range is **$30,000** to **$300,000**. If, as the defendant believes, the adjusted offense level is **25**, the Sentencing Guidelines fine range is **$20,000** to **$200,000**. U.S.S.G. § 5E1.2(c)(3).

9.    **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10.    **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not

accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11. **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees that the special assessment is due and payable at the time of sentencing.

12. **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Superseding Indictment. The parties agree that the defendant owes restitution in an amount that does not exceed $7,324,412 and that is not less than $1,500,000.

13. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The Defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that

11

may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14.    **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the wire fraud scheme, as charged in the Superseding Indictment, including but not limited to:

   a.    The real property located at 5657 Maple Drive, Lewis Center, Ohio;

   b.    $1,842,797.55 seized from US Bank account No. 104785323379, held in the name of ThinkTechAct Foundation;

   c.    $456,968.36 seized from Spire Credit Union account No. 752231-00, held in the name of MIB Holdings LLC; and

   d.    $448,285.14 seized from Spire Credit Union account No. 752231-11, held in the name of MIB Holdings LLC.

The defendant agrees that the United States may, at its option, forfeit the property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture, directly or through any company he owns or controls, on any grounds. To the extent the

defendant has requested remission or mediation of the forfeiture of the property, he withdraws any such requests. The defendant agrees not to assist any third party in challenging the forfeiture of the property.

With respect to the real property located at 5657 Maple Drive, Lewis Center, Ohio, the defendant agrees that he paid $620,000 from an MIB Holdings LLC bank account, all of which was traceable to the fraud scheme, toward the construction of a residence on this property. The defendant agrees that the equity in this property resulting from the $620,000 referenced above is subject to forfeiture. With respect to this property, the United States agrees that it will forfeit a sum of money equal to the equity in this property that is traceable to payments made with fraud proceeds in lieu of forfeiting that real property, provided that any such payment to the United States is made using funds not traceable to the fraudulent scheme described above and that such payment is made at least 60 days prior to the defendant's sentencing hearing.

The defendant consents to the entry of a money judgment forfeiture in the amount of not more than $7,324,412 but not less than $1.5 million, which represents the amount of proceeds he obtained from the wire fraud scheme alleged in Superseding Indictment. The defendant will receive a credit against the money judgment forfeiture for the net value of all property that is forfeited from him in this matter. The United States reserves the right to seek forfeiture of substitute assets and any additional directly forfeitable property.

15.    **Waivers of Appeal and Collateral Attack.** The parties hereby waive the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is

13

not limited to: the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the negotiation, taking or acceptance of the guilty plea, the sentence imposed or any issues that relate to the calculation of the Guidelines range, the supervised-release term and conditions imposed, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the top of the Guidelines range, and an appeal by the government of the substantive reasonableness of a term of imprisonment below the bottom of the Guidelines range.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

14

16.    **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

17.    **Complete Agreement.**   This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.   By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's

15

decision to plead guilty in accord with the terms and conditions of this plea agreement

is made of the defendant's own free will.

Dated:

7/24/2025

JOSEPH H. THOMPSON
Acting United States Attorney

BY:     MATTHEW S. EBERT
HARRY M. JACOBS
DANIEL W. BOBIER
Assistant United States Attorneys

Dated: 7/24/2025

MAHAD IBRAHIM
Defendant

Dated: 7/24/2025

WILLIAM J. MAUZY
WILLIAM R. DOOLING
Counsel for Defendant

16